Statement.

# Richmond

WILLIAMS v. COMMONWEALTH EX. REL. SMITH AND OTHERS

March 12, 1914.

Absent, Cardwell, J.

1. OFFICERS—*Residence—Voters.*—The meaning of the words "resident' or "residence' is to be determined from the facts and circumstances taken together in each particular case. For the purpose of voting and holding office a man cannot have more than one legal residence. · A legal residence once acquired by birth or habitancy is not lost by temporary absence for pleasure, health or business, or while attending to duties of a public office. Where a man has two places of living, which is his legal residence is to be determined largely, where the right to vote or hold office is involved, by his intention. When he acquires a new legal residence he loses the .old, but to effect this there must be both act and intention.

2. RESIDENCE—*Temporary Absence—Case at. Bar.*—If a person leave his original residence with no intention of returning, and adopt another (for a space of time, however brief, if it be done) with intention of remaining there permanently, his first residence is lost. But if, in leaving his original residence, he does so with intent to return, such original residence continues in law notwithstanding the temporary absence of himself and family. In the case at bar, there is nothing in the acts or conduct of the party in going to and residing at his cottage outside the city limits which would justify the jury or the court in not accepting as true his testimony that his going to and residing at the cottage was merely temporary and with intention of returning to his residence in the city.

Error to a judgment of the Corporation Court of the city of Alexandria in a proceeding by *quo warranto.* Judgment for the petitioners. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Gardner L. Boothe,* for the plaintiff in error.

*Samuel G. Brent,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The only question involved in this case, which is a proceeding of *quo warranto,* is whether or not the plaintiff in error was a resident of the city of Alexandria. It is averred in the petition for the writ, which was filed on the 25th of January, 1913, that the plaintiff in error was, at the regular election in June, 1910, elected a member of the common council of that city, from the second ward, for a term of four years, commencing on September 1 following, and that he qualified as such member of the council by taking the oath, and entered upon the discharge of his duties at the commencement of his term, and still continues to exercise his functions as such member. It is further averred in the petition, that some time during the year 1912 the plaintiff in error removed from the city into the county of Alexandria and took up his residence there, and has ever since resided in the county and has not since said removal been a resident of the city; that when he ceased to be a resident of the city his office as a member of the council *ipso facto* became vacant; and that he is now an intruder and usurper in that office.

Upon that petition a writ of *quo warranto* was issued against the plaintiff in error to show by what authority of law he was discharging or seeking to discharge the duties of a member of the city council. He filed an answer to the petition, in which he admitted that he had been elected, had qualified and was acting as a member

of the common council of the city, denied that he had changed his residence from the city to the county, and stated the circumstances and facts attending his absence from the city as follows:

"That more than a year ago he caused to be erected at Cottage Park in Alexandria county, Virginia, a house in which he expected to spend the summer months, which house was completed in the month of January, 1912, and that about the first of June, 1912, he went to said house at Cottage Park in Alexandria county, with the intention of spending several months, but with no intention whatever of giving up his residence in the city of Alexandria, Virginia, which residence he has owned for a number of years, and on which he has paid and is paying taxes, and in which practically all of his furniture is kept, on which furniture he has paid and is paying taxes, said residence being known as No. 206 north Royal street, in the second ward of the city of Alexandria, Virginia. (A copy of his deed for this house is filed herewith marked 'Exhibit 1 with answer,' and the tax receipts are filed herewith marked 'Exhibit 2 with answer').

"That at the time he went to Alexandria county, as aforesaid, he removed from his residence in the city of Alexandria to his house in Alexandria county only his books and several pieces of furniture, leaving by far the greater part of his said furniture in his residence at No. 206 north Royal street, Alexandria, Virginia.

"That in addition to his residence in the second ward in the city of Alexandria, Virginia, he has a place of business which he owns and on which he pays taxes, and in the second story of which it has always been his intention to construct apartments for living, in the event that he should at any time dispose of his present residence at No. 206 north Royal street, Alexandria.

"That it was his intention, in the event of an early

winter, to return from his house in Alexandria county
to his residence in the city of Alexandria, Virginia, be-
fore Christmas, but that at the request of his wife he re-
mained in the country owing to the condition of his
wife's health, she having preferred to remain in the
country until the birth of a child, which occurred during
the past month."

Upon the trial of the proceeding upon the plea of not
guilty, there was a verdict and judgment against the
plaintiff in error. To that judgment this writ of error
was awarded.

Two errors are assigned—one to the action of the
court in giving and refusing instructions, and the other
to its refusal to set aside the verdict as contrary to the
law and the evidence.

There is little, if any, conflict in the evidence. It is a
*concessum* in the case that when the plaintiff in error was
elected and qualified as a member of the common council,
he was a resident of and a qualified voter in the second
ward of the city, as required by section 1015-a of the
Code in order to be eligible to that office. He was then
and had been for several years engaged in business both
in the city of Washington and in the city of Alexandria,
but spent much the greater portion of his time in the
former city. The facts and circumstances which are re-
lied on as showing that he had ceased to be a resident of
the city of Alexandria are in substance that in January,
1912, he had completed a cottage at Cottage Park in the
county and outside of the city of Alexandria; that in
June of that year he and his wife went to the cottage
to live, and were residing there when this proceeding was
commenced, and that when the invitations to or notices of
his marriage were sent out in December, 1911, they stated
that he and his wife would be "at home at Cottage
Park," after a certain date; that he went to and returned

from his place of business in Washington from and to his cottage; that notices of the meetings of the city council were left for him at his place of business in the city of Alexandria; and that he had offered his residence in the city for sale.

The uncontradicted evidence on the other hand is that the plaintiff in error was thirty-five years of age, was born in the city of Alexandria, had resided in the second ward of that city for more than twenty years, had always voted and paid taxes there, including his poll tax; that he owned a residence in the city in which he and his mother and other members of her family lived; that he and his wife, after their wedding journey, which was in December, 1911, or in January, 1912, returned to his residence in the city and made their home there until they went to his cottage in the county in June following; that when he went there he took with him some of his books, one table and three chairs, leaving the residue of his furniture in his residence in the city; that while he had offered his residence in the city for sale about a year and a half before the trial, it was with the understanding that he was not to remove from it, if sold, until his apartments over his place of business, for which he had secured plans two or three years before, had been finished. He testified that he went to the cottage with the intention of returning to his residence in the city and gave as a reason why he had not returned earlier as he intended, that his wife who was soon to be confined wished to remain at the cottage, near which her parents lived, until after the birth of their child, which occurred about the 12th of January following, this proceeding having been instituted on the 25th of that month. It further appears that the plaintiff in error attended all the meetings of the city council and the meetings of the committees of which he was a member while he was living at the cot-

tage; that notices of such meetings were always left at his place of business before as well as after he went to the cottage.

It is difficult to give an exact definition of what is meant by "resident" or "residence," as used in particular statutes. The meaning of these words is to be determined from the facts and circumstances taken together in each particular case. See the following cases where what is meant by those words has been discussed, as used in different statutes: *Pilson* v. *Bushong,* 29 Gratt. (70 Va.) 229, 239-40; *Long* v. *Ryan,* 30 Gratt. (71 Va.) 718-19; *Lindsay* v. *Murphy,* 76 Va. 428; *Griffin* v. *Woodford,* 100 Va. 473, 479-80, 41 S. E. 949, *Pendleton* v. *Com'th.,* 110 Va. 229, 232-3, 65 S. E. 536.

For the purpose of voting and holding office a man cannot have more than one legal residence. A legal residence once acquired by birth or habitancy is not lost by temporary absence for pleasure, health or business, or while attending to the duties of a public office. Where a man has two places of living, which is his legal residence is to be determined largely, where the right to vote or hold office is involved, by his intention. When he acquires a new legal residence he loses the old, but to effect this there must be both act and intention. See Mc-Crary on Elections (4th ed.), sec. 97; *Lincoln* v. *Hepgood,* 11 Mass. 350, 352; *State* v. *Judge,* 13 Ala. 805, 813; *Cadwallader* v. *Howell,* 18 N. J. Law 138, 145; *Guier* v. *O'Daniel,* 1 Am. Lead. Cases 877, 893.

In the case of *State, &c.* v. *City Council of Camden,* 39 N. J. L. 57, the question was whether or not the office of councilman had become vacant on the ground that the incumbent had ceased to reside in the city. In that case it was said, quoting with approval from the opinion in *Cadwallader* v. *Howell,* 18 N. J. Law (3 Harrison) 138, "that a man's legal residence is not changed when he

leaves it for temporary purposes and transient objects, meaning to return when those purposes are answered and objects attained.''

In the case in 39 N. J. L., the incumbent had removed himself and family to another place for temporary residence. The incumbent testified that he was registered in the fifth ward of the city; that he always had voted there; that he was assessed there and nowhere else; that he rented his house there upon condition that it should be surrendered to him at any time on one day's notice; that he went only temporarily to the court house, the place of his temporary residence, always intending to return to his home in the fifth ward and to maintain that as his residence. The court said there was nothing in the record that would justify the court in refusing to believe these statements.

In *Isham* v. *Gibbons,* 1 Bradford (N. Y.) 69, where the question was whether testator had ceased to be a resident of New Jersey because he lived part of the time in the city of New York in a house hired from year to year. ''The onus,'' said the court, ''of proving the charge is on the party alleging it (the presumption of law being that a domicil once acquired subsists until a change is proved), and this onus is not discharged 'by merely proving residence in another place, which is not inconsistent with an intention to return to the original domicil, for the charge must be demonstrated by fact and intention.''

In *Crawford* v. *Wilson,* 4 Barbour 504, the question was whether a teacher had ceased to be a resident of a particular place because his actual residence had been in another place for four months where he was teaching school. It was held that by residing in the last-named place temporarily for a particular purpose he did not cease to be a resident of the former place. The court

said, that "a person having a fixed place of abode did not lose his residence there by going to any other place for a particular purpose temporarily, whether for business, pleasure or health, with intent of returning to the same as soon as such purpose is accomplished; that his actual residing where he was teaching school did not determine his legal residence and domicil, when he went to the place with the intention of returning when the purposes for which he went were accomplished.

It is well known that many persons have their summer homes and their winter homes—their city homes and their country homes—homes where they were elected to office and homes at other places where the duties of such offices are performed; yet it is never held that such persons have ceased to be residents of their original places of residence, by residing at their other homes or places of residence, unless it appears from their acts or conduct, or otherwise, that they intended to give up their old and acquire new residences. In such cases the act and intent must concur.

The true test in cases of the kind under consideration seems to be this, that "If a person leave his original residence *animo non revertendi,* and adopt another (for a space of time, however brief, if it be done) *animo manendi,*. his first residence is lost. But if in leaving his original residence, he does so, *animo revertendi,* such original residence continues in law notwithstanding the temporary absence of himself and family. Such is the uniform language of the books, as well as the clear conclusion of common sense." *Cadwallader* v. *Howell, supra.*

Any other rule, as was said in that case, would make an immense class of persons (whose influence and stake in the community as property holders are great) mere political vagrants.

In this case the plaintiff in error testified that in residing at his cottage he had no intention of giving up his legal residence in the city, and his remaining at the cottage longer than he intended when he went there is satisfactorily explained. The fact that he spent a large portion of his time attending to his business in the city of Washington does not affect the question, for he carried on his business there in the same way before, when he was elected to and qualified as a member of the council and when he was admittedly a resident of the city of Alexandria. He performed all the duties of his office, and in the same manner while living at the cottage as he did when living in the city. There is nothing in his acts or conduct in going to and residing at the cottage which would justify the jury or the court in not accepting as true his testimony that his going to and residing at his cottage was merely temporary and with the intention of returning to his residence in the city. Even if the instruction given by the court had correctly stated the law applicable to the facts of the case (as it clearly did not) the verdict of the jury ought to have been set aside as contrary to the evidence.

The judgment complained of must be reversed, the verdict set aside and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*