𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

TOWSON V. TOWSON.

January 22, 1920.

1. DIVORCE—*Plea to the Jurisdiction—Trial By Jury—Issue Under Section 3274 of the Code of 1904, Distinguished From Issue Out of Chancery.*—In a suit for divorce brought by a husband on the ground of desertion, two pleas to the jurisdiction were filed by the wife, one denying that the husband had been domiciled in the State for one year before the suit was brought, and the other denying that the husband was a resident of the city where the suit was brought, at the time the suit was instituted. Issue was taken on these pleas, and a verdict found by a jury on both pleas in favor of the husband. The jury trial was demanded by the husband.

*Held:* That the trial court committed no error in impaneling a jury to try the issues made on the pleas to the jurisdiction. This was not a case of an issue out of chancery, and is not controlled by the rules regulating the awarding of such issues, but is a wholly statutory proceeding.

2. EQUITY—*Issue Upon Plea—Trial by Jury—Issue Under Section 3274 of the Code of 1904 Distinguished from Issue Out of Chancery.*—Section 3274 of the Code of 1904 declares that: "A plaintiff in equity may take issue upon a plea, and either party may have such issue tried by a jury." The object is, not to inform the conscience of the chancellor, but to determine the issue of fact raised by the plea. The chancellor has no discretion about awarding the jury trial. The statute is mandatory that "either party may have such issue tried by a jury," and the verdict when rendered stands like any other verdict of a jury where the right to such trial is given without discretion on the part of the court. The court cannot disregard the verdict nor discharge the jury before verdict, as he may on the trial of an issue out of chancery.

3. DIVORCE—*Plea to the Jurisdiction—Trial by Jury—Effect of Verdict Under Section 3274 of the Code of 1904—Case at Bar.*—In the instant case there was testimony on the subject of the "domicile" and "residence" of the husband prior to,

and at the time of, the institution of the suit, and much of it was of a conflicting nature. It was therefore pre-eminently a case for a jury, under section 3274 of the Code of 1904, whose finding of the falsity of the wife's pleas to the jurisdiction gives the husband the same advantages as if it had been so found by verdict at law.

4. DIVORCE—*Instructions—Omission of Evidence.*—In the instant case the two sets of instructions presented the different theories of the contesting parties. It is not always possible from the mass of evidence introduced to introduce it all, even on a single subject, in a single instruction, and if no instruction were given which covered the omitted evidence it might be error; but, in the instant case, that question did not arise as the different theories of the parties were fully presented by instructions given at the instance of one or the other of the parties covering all the material evidence in the case.

5. INSTRUCTIONS—*Error Cured by Other Instructions.*—Although an instruction standing alone may have been misleading, the verdict of the jury will not on that account be set aside, where it appears that the objection thereto was corrected by other instructions given by the court. In other words, instructions in a given case are to be read as a whole, and when so read, if it can be seen that the instruction could not have mislead the jury, their verdict will not be disturbed, even though one or more of the instructions were defective; and defects in one instruction may be cured by a correct statement of the law in another.

6. APPEAL AND ERROR—*Instructions—Invited Error.*—Appellant cannot complain of error of law in the instructions given at her request.

7. ARREST OF JUDGMENT—*Error not Apparent on the Face of the Record.*—A motion in arrest of judgment lies only for error apparent on the face of what is *per se* a part of the record at common law, and not for what is placed on the record by bills of exception. The motion existed at common law before bills of exception were authorized by statute.

8. "DOMICILED"—"*Resident*"—*Statutes—Construction of Technical Words.*—The words "domiciled" and "resident" are technical words, and, according to the usual rule of construction of statutes, are presumed to have been used in their technical sense. This is especially true where both words are used in the same section of a statute.

9. "DOMICILE"—"*Residence*"—*Meaning of Terms.*—Though frequently so used, "residence" and "domicile" are not synonymous words and domicile has the larger significance. The meaning of the word residence depends upon the subject-

81

matter and connection in which it is used. In general terms
it may be said to be the dwelling place of a person, but it
may be either his permanent or temporary abode. In the
construction of statutes, the meaning of the word residence
depends upon the context and purpose of the statute. As
used in one statute it may clearly refer to a mere business
residence, while as used in another it may just as clearly
refer to domicile as technically and strictly defined. In de-
termining the meaning of the word in a particular statute,
the legislative purpose and the context must always be kept
in view.

10. "Domicile"—"Residence"—*More Than One Residence.*—While
a man can have but one domicile at a time, he may have
more than one residence at the same time.

11. Divorce — *Jurisdiction* — *Venue* — "Domicile" — "Residence"—
*Conclusiveness of Verdict of Jury.*—Section 2259 of the Code
of 1904 declares that no suit for divorce shall be maintain-
able in the courts of this Commonwealth unless one of the
parties has been domiciled in the State for at least one year
preceding the commencement of the suit, and that, if the
defendant is a non-resident, the suit may be brought in the
county or corporation in which the plaintiff resides. The
object of the first provision was to prevent the opening of
the courts of the Commonwealth to mere residents, and to
restrict them to litigants who had a more permanent identi-
fication with the State. But the latter provision was mani-
festly a mere matter of venue, and this venue must be fol-
lowed if the defendant objects to any other. In the instant
case, whether or not the complainant followed the venue fixed
by statute was a question of fact which the verdict of the
jury answered in the affirmative upon ample evidence to
support it and that verdict is conclusive.

12. Appeal and Error—*Instructions—Harmless Error.*—Plaintiff
cannot complain of an instruction, although erroneous, where
the verdict is in his favor, and defendant cannot complain
of such instruction where it was granted at her request. The
error, therefore, is harmless, as neither party is hurt by it.

13. Divorce—*Plea to the Jurisdiction—Trial By Jury.*—In a suit
for divorce brought by a husband on the ground of deser-
tion, two pleas to the jurisdiction were filed by the wife,
one denying that the husband had been domiciled in the
State for one year before the suit was brought, and the
other denying that the husband was a resident of the city
where the suit was brought, at the time the suit was instituted.
Issue was taken on these pleas, and a verdict found by a jury
on both pleas in favor of the husband.

*Held:* That the circuit court did not commit any error "in entering up judgment on the verdict of the jury before a hearing of the case upon its merits." The defendant called in question the jurisdiction of the court by her pleas, and it was proper to settle that question before proceeding to hear the cause on its merits .

14. DIVORCE—*Desertion—Justification.*—Desertion by one consort of the other can only be justified by showing such conduct on the part of the deserted party as would entitle the other to a divorce *a mensa,* and nothing short of this will justify a wilful desertion, or a continuance of it.

15. DIVORCE—*Decree in Another Jurisdiction—Res Judicata.*—A wife brought a suit in the Supreme Court of the District of Columbia for divorce on the ground of cruelty on the part of the husband. A decree was entered by that court holding that the conduct of the husband was not such as to entitle the wife to a divorce *a mensa.* In a suit by the husband in Virginia for divorce on the ground of desertion, this decree of the Supreme Court of the District of Columbia is binding on the parties and the wife cannot assert that her desertion is justified because of the husband's cruelty.

Appeal from a decree of the Circuit Court of city of Alexandria. Decree for complainant. Defendant appeals.

*Affirmed.*

This is a suit for divorce brought by the husband, in which a divorce *a mensa* was granted to him, on the ground of desertion, and the wife appeals.

Two pleas to the jurisdiction were filed by the wife, one denying that the husband had been domiciled in the State for one year before the suit was brought, and the other denying that the husband was a resident of the city of Alexandria, where the suit was brought, at the time the suit was instituted. Issue was taken on these pleas and a verdict found by a jury on both pleas in favor of the husband. There was afterwards a hearing on the merits and a decree rendered in favor of the husband.

On September 22, 1916, the wife filed her bill against her husband, in the Supreme Court of the District of Columbia,

praying for a divorce *a mensa et thoro,* for alimony, coun-
sel fees and the custody of their infant child, a son then
fifteen years of age.   The ground of this suit was cruelty
on the part of the husband, and the bill also charged that
the husband had contributed nothing to her support since
September 16, 1916, *six days before the suit was brought.*
The husband answered denying the allegations of the bill.
The witnesses were examined *ore tenus* before the judge,
and, in an elaborate written opinion, he decided that the
charge of cruelty was not sustained, and entered a decree
refusing the divorce, but granting to the wife permanent
alimony, counsel fees and the custody of the child.   From
so much of the decree as allowed alimony and counsel fees
the husband appealed.   The Court of Appeals of the Dis-
trict decided "that the decree, in so far as it provides for
the separate maintenance for the wife, and affects the cus-
tody of the child, should be reversed; but in all other re-
spects affirmed," and awarded costs and attorney's fees to
the wife.   See *Towson* v. *Towson* (App. D. C.), 47 Wash.
Law R. 345, 258 Fed. 517.

On October 9, 1916, just seventeen days after the wife
brought her suit, this suit was brought by the husband in
the Circuit Court of the city of Alexandria, so that both
suits were pending at the same time.   The final decree in
the Supreme Court of the District of Columbia was entered
January 2, 1918.   That in the Circuit Court of Alexandria
on March 7, 1918, and that in the Court of Appeals of the
District on ————, 1918.   The wife entered a special ap-
pearance in filing her pleas to the jurisdiction, one of which
was filed December 4, 1916, and the other March 7, 1917.
She also filed another plea setting up the pendency of her
suit in the District of Columbia, but the decree entered in
the cause of March 16, 1917, states that the "pleas to the
pendency of another suit were withdrawn in open court
by counsel for the defendant."   The decree last mentioned

also directed a jury to be impaneled to try the issues joined on the two pleas to the jurisdiction, and that no further proceedings be had in the cause until said issues were decided. The jury trial was demanded by the husband who was the complainant in the cause. The first jury summoned were unable to agree on a verdict and were discharged. At a subsequent term, another jury was impaneled to try said issues, to-wit: "1st, Whether the complainant, Richard M. Towson, was domiciled in the State of Virginia one year next before the institution of this suit, to-wit, October 9, 1916. 2nd, Whether the complainant at the date of the issuance of the writ in this suit, to-wit, October 9, 1916, was a *bona fide* legal resident of the city of Alexandria." This jury found both issues for the husband. The court refused to set aside the verdict on the motion of the wife, but entered up judgment in accordance with the verdict, and the case was continued for proof on the merits. The defendant filed her answer in the cause January 3, 1918, and a supplemental answer on January 19, 1918. These answers put in issue all the allegations of the bill setting forth the grounds for divorce. Depositions were taken by both parties, and in addition thereto, by consent of the parties, the evidence given in the wife's suit in the District of Columbia, the opinion of the court and decree, were also read as evidence in this suit on the merits of the case, but not on the question of jurisdiction.

The following are the assignments of error in the petition for this appeal:

"1. The court erred in ordering the issues upon the peas to the jurisdiction to be tried by a jury; because (a). At the time the issues were ordered, neither party had taken proof upon the issues raised by the pleas. (b) The motion for an order directing the trial by a jury upon the issues joined, was not supported by affidavits, as required by section 3381 of the Code.

"2.  The court erred in granting the three instructions prayed by the complainant, because, (a) They do not correctly propound the law upon the issues joined, and are misleading.  (b) They conflict with the instructions granted the defendant and tended to confuse and to mislead the jury.  (c) They state mere abstract propositions of law, and make no application of the law to the facts at issue, and are misleading.

"3.  The court erred in overruling the motions of the defendant to set aside the verdict of the jury in arrest of judgment, and for a new trial, and in entering judgment on the verdict of the jury; because (a) The verdict was contrary to the law and evidence of the case.  (b) The court erred in entering judgment upon the verdict before a hearing of the case upon its merits.

"4.  The court erred in entering the final decree of March 7, 1918, because, (a) The decree is not supported by either the law or the evidence of the case.  (b) The decree of the Supreme Court of the District of Columbia, in the suit of the defendant against the complainant, was entitled to full faith and credit, and while it remained in force was a bar to any further proceedings in this cause, on the ground of desertion, the decree of said court having been rendered and plead before the final decree in this cause of March 7, 1918."

*Jas. R. & H. B. Caton,* for the appellant.

*C. E. Nicol* and *T. E. H. McCroskey,* for the appellee.

BURKS, J. (after making the foregoing statement) delivered the opinion of the court.

[1, 2] The trial court committed no error in impaneling a jury to try the issues made on the pleas to the juris-

diction.  This was not a case of an issue out of chancery, and is not controlled by the rules regulating the awarding of such issues, but is a wholly statutory proceeding.  Section 3274 of the Code (1904) declares that "A plaintiff in equity may take issue upon a plea, and either party may have such issue tried by a jury."  The object is not to inform the conscience of the chancellor, but to determine the issue of fact raised by the plea.  The chancellor has no discretion about awarding the jury trial.  The statute is mandatory that "either party may have such issue tried by a jury," and the verdict when rendered stands like any other verdict of a jury where the right to such trial is given without discretion on the part of the court.  The court cannot disregard the verdict nor discharge the jury before verdict, as he may on the trial of an issue out of chancery.  As to issues out of chancery, see *Miller* v. *Wills*, 95 Va. 337, 28 S. E. 337; *Catron* v. *Norton Hardware Co.*, 123 Va. 380, 96 S. E. 853.  The statute was probably suggested by the remarks of Judge Pendleton in *Pryor* v. *Adams*, 1 Call (5 Va.) 382, 1 Am. Dec. 533.  In that case it is said:  "On the next day, Pendleton, president, observed, he was apprehensive, that when speaking of the jurisdiction, yesterday, he said that the defendant 'may by plea deny the fact,' and on that, ground his objection.  The fact thus put in issue, is to be tried, and if found for the defendant, his objection operates, if found for the plaintiff, the question occurs whether the fact alleged be a sufficient ground of equity.'  It might be inferred that he thought it ought to be tried by a jury, but that, however, was not his meaning, for he meant only, that it should be tried according to the usual course of chancery causes."  The revisors of 1819 manifestly thought the case a proper one for a jury trial and enacted that "if the complainant conceives any plea or demurrer to be naught, either for the matter or manner of it, he may set it down with the clerk to be argued; or

if he thinks the plea good, but not true, he may take issue upon it, and proceed to trial by jury, as has been heretofore used in other causes in chancery, where trial hath been by jury: and if, thereupon, the plea shall be found false, the complainant shall have the same advantages, as if it had been so found by verdict at common law." 1 Rev. Code 1819, ch. 66, sec. 97, p. 215. This section is in the chapter on "Courts of Chancery," The same identical words also appear as section 55 of chapter 71 on "County and Corporation Courts."

Pleas in chancery were then and since that time seldom used. When such a plea was used it was generally to present some single fact, vital to the cause, and the determination of which would end the litigation at once. For example, a married woman was sued in equity to subject lands to the payment of a debt prior to the enactment of the married women's statute. She simply pleading coverture and the plea being found in her favor ended the case. That class of cases seems proper for a jury trial. At the revisal of 1849 the section appears as section 33 of chapter 171, in the following words: "A plaintiff in equity may take issue upon a plea and have such issue tried by a jury. If the plea be found false, he shall have the same advantage as if it had been so found by a verdict at law." At the revisal of 1887 the section appears as section 3274 in the following words: "A plaintiff in equity may take issue upon a plea, and either party may have such issue tried by a jury." This section omits the statement as to the effect of the verdict contained in the previous statutes probably because unnecessary, for Judge E. C. Burks, one of the revisors, speaks of the change made in the section as follows: "Under the former law, it would *seem* that if a plaintiff in equity took issue upon a plea, *he only* could have such issue tried by a jury. This is changed, so as to allow *either* party to have such trial." Burks' Address p. 39. It

seems reasonably certain that if any other change was intended it would have been mentioned.

[3] In the case in judgment, there was a great deal of testimony on the subject of the "domicile" and "residence" of the husband prior to, and at the time of, the institution of the suit, and much of it was of a conflicting nature. It was pre-eminently a case for a jury whose finding of the falsity of the defendant's pleas should give him "the same advantages as if it had been so found by verdict at law."

[4-6] The next error assigned is that the trial court erred in the instructions given on the trial of issues on the pleas to the jurisdiction (a) because they do not correctly propound the law and are misleading, (b) because they conflict with instructions given for the defendant and (c) because they state abstract propositions of law and are misleading. The court gave three instructions for the plaintiff and seven for the defendant. They all relate to either or both of the subjects of "domicile" and "residence," questions often arising and frequently difficult to answer accurately. What constitutes each has been very fully discussed in recent opinions of this court, and we have nothing new to add thereto. *Cooper* v. *Commonwealth,* 121 Va. 338, 93 S. E. 680; *Williams* v. *Commonwealth,* 116 Va. 272, 81 S. E. 61. No one of the instructions asked for by the plaintiff directs a verdict. Instruction No. 1 was on the subject of what constituted "residence," No. 2 was chiefly on the subject of what constituted domicile and who has the burden of proof on an allegation of change of domicile, and No. 3 chiefly on the subject of the effect on domicile of an absence from the State in discharge of duties under the United States government. They all conform substantially to the law as stated in the cases cited, though there are some occasional inaccuracies of statement. We do not think, however, that the jury could have been misled by such inaccuracies. None of them

82

is amenable to the objection of being mere abstract propositions of law. They bore directly upon the issues submitted to the jury and there was ample evidence on which to base them. Nor do we think that they conflict with the instructions given for the defendant. The two sets of instructions presented the different theories of the contesting parties. In the mass of evidence introduced it is not always possible to introduce it all, even on a single subject, in a single instruction, and if no instruction were given which covered the omitted evidence it might be error, but this question does not arise where the different theories of the parties are fully presented by instructions given at the instance of one or the other of the parties covering all of the material evidence in the cause, as was done in this case. In *Ches. & O. R. Co.* v. *McCarthy,* 114 Va. 181, 188-9, 76 S. E. 319, 322, it is said "Although an instruction standing alone may have been misleading, the verdict of the jury will not on that account be set aside, where it appears that the objection thereto was corrected by other instructions given by the court. In other words, instructions in a given case are to be read as a whole, and when so read, if it can be seen that the instruction could not have misled the jury, their verdict will not be disturbed, even though one or more of the instructions were defective; and defects in one instruction may be cured by a correct statement of the law in another. *Wash., etc., R. Co.* v. *Quayle,* 95 Va. 741, 30 S. E. 391; *Adamson* v. *Norfolk, etc., Co.,* 111 Va. 556, 69 S. E. 1055." In the case in judgment we do not think there was any error of law in any of the instructions given for the plaintiff, and if there was any deficiency in the evidence recited in them it was supplied by the instructions given for the defendant. If there was error of law in the instructions given for the defendant she cannot complain of it. We do not think the jury could have been misled by the instructions.

The next error assigned is that the trial "court erred in overruling the motions of the defendant, to set aside the verdict of the jury, in arrest of judgment and for a new trial, and in entering judgment on the verdict of the jury."

[7] There was no error in overruling the motion in arrest of judgment. Such a motion lies only for error apparent on the face of what is *per se* a part of the record at common law, and not for what is placed on the record by bills of exception. The motion existed at common law before bills of exception were authorized by statute. See Graves' Pleading 89; *Ivanhoe Furnace Co.* v. *Crowder,* 110 Va. 387, 66 S. E. 63.

There were two issues submitted to the jury: First, was the complainant domiciled in Virginia for one year next before the institution of his suit, and, second, was he at the time of instituting his suit, to-wit: on October 9, 1916, a *bona fide* resident of the city of Alexandria.

[8-11] Section 2259 of the Code (1904) declares that no suit for divorce shall be maintainable in the courts of this Commonwealth unless one of the parties has been *domiciled* in the State for at least one year preceding the commencement of the suit, and that if the defendant is a nonresident, the suit may be brought in the county or corporation in which the plaintiff *resides.* The latter provision was manifestly a mere matter of venue. The statute draws a clear distinction between domicile and residence, and it seems clear that the object of the first provision was to prevent the opening of the courts of this Commonwealth to mere residents and to restrict them to litigants who had a more permanent identification with the State and the welfare of its citizens. The words "domiciled" and "resident" are technical words, and, according to the usual rule of construction of statutes, are presumed to have been used in their technical sense. This is especially true where both words are used in the same section of a statute. But, as

said in *Cooper* v. *Commonwealth, supra,* "Though fre-
quently so used 'residence' and 'domicile' are not synony-
mous words and *domicile* has the larger significance. The
meaning of the word *residence* depends upon the subject
matter and connection in which it is used. In general
terms it may be said to be the dwelling place of a person,
but it may be either his permanent or temporary abode.
In the construction of statutes, the meaning of the word
*residence* depends upon the context and purpose of the sta-
tute. As used in one statute it may clearly refer to a mere
business residence, while as used in another it may just
as clearly refer to domicile as technically and strictly de-
fined. In determining the meaning of the word in a par-
ticular statute, the legislative purpose and the context must
always be kept in view."

Great stress is laid by counsel for the appellee, Mrs. Tow-
son, on the fact that about the time this suit was brought,
the complainant registered as a voter in Stafford county
and voted at the presidential election held November 7,
1916, and it is insisted that he could not be a resident of
the city of Alexandria at the time of the institution of his
suit, and at the same time a resident of Stafford county.
He seems to ignore the fact that, while a man can have but
one domicile at a time, he may have had more than one resi-
dence at the same time. In the *Cooper Case, supra,* we
held that Cooper had a domicile and also a domiciliary resi-
dence in West Virginia, though his actual residence and
place of permanent abode for the time being was at Salem,
Virginia. The opinion in that case is very full and in-
structive on this subject. Amongst other things, it is said
in the opinion: "The residence of the president is in the
White House at Washington, while the domicile of the in-
cumbent is in New Jersey; the residence of ambassadors
during their terms must be at the capitals of the foreign
countries to which they are accredited, while their domi-

ciles remain in the territory of their own governments; many other public officials, voluntarily or because required by law to do so, change their residence during their terms but retain their original domiciles, in which they continue to exercise their political rights during their terms and to which they return at the expiration thereof; and many other persons, either for pleasure, health or business reasons, have and maintain several residences while they retain and can retain but one domicile. As to all of these classes of persons, and those included therein are numerous, their domiciles determine their right to vote as well as the *situs* for taxation of their intangible property."

The opinion in the *Cooper Case, supra,* also quotes at length from the opinion of Kelly, J., now a member of this court, but then judge of the Corporation Court of the city of Bristol, in *Bruner* v. *Bunting,* 15 Va. Law Reg. 516, in which Judge Kelly held that, within the meaning of the Virginia election laws, domicile carried with it what may be called legal residence, or all the residence necessary to entitle a party to vote, and this we understand to be the general rule prevailing elsewhere. *Lankford* v. *Gebhart,* 130 Mo. 621, 32 S. W. 1127, 51 Am. St. Rep. 585; 9 R. C. L. sections 47, 49, and cases cited. Indeed, we do not understand counsel for the appellee to deny that, if the facts justified it, the complainant could have shown that he had retained his domicile in Stafford county with the right to vote there, and at the same time have had a residence for other purposes in the city of Washington, D. C. He did not object to the admissibility of the evidence to prove these facts, but on the contrary took evidence in rebuttal and argued strenuously to show that the complainant had not established them. If the complainant could have a domiciliary residence in Stafford county with the right to vote there, and at the same time a residence for other purposes in the city of Washington, D. C., why could not the latter resi-

dence have just as well been in Alexandria as in Washington? If it was cheaper to live in Alexandria, or if for any other reason the complainant preferred to reside there, what difference could it make to the State of Virginia? What difference could it make to the State whether the suit for divorce was brought in the city of Alexandria, or in the county of Stafford? The State was careful to provide that its courts should not be open to suits for divorce at the instance of mere residents, and confined their cognizance to cases where "one of the parties had been domiciled in this State for at least one year preceding the commencement of the suit," but, having done this, it then gave a choice of venues for the suit. In the matter of venue the State was not particularly interested further than to provide for the convenience of those to whom the courts were open. Having tendered the jurisdiction of the courts to a certain class of litigants, it was immaterial to the State in what locality that jurisdiction was exercised. It did, however, fix the venue of such suits, and this venue must be followed if the defendant objects to any other. Whether or not the complainant followed the venue fixed by the statute was a question of fact which the verdict of the jury answered in the affirmative upon ample evidence to support their verdict and that is conclusive.

[12, 13] The sixth instruction given for the defendant is in conflict with the views hereinbefore expressed and was therefore erroneous but the error was harmless. The plaintiff cannot complain because the verdict was in his favor, and the defendant cannot as it was given at her request. Under the circumstances neither party is hurt by it. The circuit court did not commit any error "in entering up judgment on the verdict of the jury before a hearing of the case upon its merits." The defendant called in question the jurisdiction of the court by her pleas and it was proper to settle that question before proceeding to hear the cause on its merits.

[14] Upon the merits of the case not a great deal need be said. In the suit between the same parties in the District of Columbia, this same trouble between the husband and wife was fully investigated. The witnesses were brought before the judge and testified *ore tenus*. After a review of all the testimony in an elaborate written opinion, which evidence and opinion were made part of the record in this case by consent of parties, he entered a decree that the wife had not sustained her charge of cruelty on the part oi her husband and was not entitled to a divorce on that account. In the case before us, the desertion on the part of the wife is admitted, but she claims it was justified by reason of his cruel treatment. She now declares that the separation is final and that she would not return to live with him even "in the White House."

In *Alkire v. Alkire*, 33 W. Va. 517, 11 S. E. 11, it is said: "According to the weight of authority, and what seems to be the only safe and practicable rule, the justifiable cause which will excuse .one of the parties for leaving the other, must be such conduct as could be made the foundation of a judicial proceeding for divorce *a mensa et thoro*. Nothing short of such conduct will justify a wilful separation or a continuance of it. The interests of society, the happiness of the parties, and the welfare of families demand such a rule. Separation is not to be tolerated for light causes, and all causes are light which the law does not recognize as grounds for divorce."

In *Crounse v. Crounse*, 108 Va. 108, 60 S. E. 627, it was held that desertion by one consort of the other can only be justified by showing such conduct on the part of the deserted party as would entitle the other to a divorce *a mensa*, and that nothing short of this will justify a wilful desertion, or a continuance of it.

[15] The decree of the Supreme Court of the District of Columbia is binding on the parties to this suit, and as that

decree holds that the conduct of the husband was not such as to entitle the wife to a divorce *a mensa,* it follows that the desertion by the wife and her continuance of it are wrongful. That question is *res. judicata.* The situation then is this: The wife admits the desertion and declares that her determination not to return to her husband is irrevocable, and it has been judicially determined in a suit between the same parties that this desertion and its continuance is wrongful, and that the wife is not entitled to a divorce on account of the alleged misconduct of her husband. Under the circumstances, it is unnecessary to consider the evidence adduced in the present suit. There was no error in decreeing the divorce to the husband on the ground of desertion.

The decree of the trial court makes no order as to the custody of the infant, a boy now about eighteen years of age, and we are not asked to make any.

Under the circumstances of the case, a decree will be entered here, affirming the decree of the circuit court, but awarding costs to the appellant.

*Affirmed.*