66 S.E.2d 490 (1951)
191 Va. 565
DOTSON
v.
COMMONWEALTH.
Supreme Court of Appeals of Virginia.
September 5, 1951.
*491 S. H. & Geo. C. Sutherland and B. F. Sutherland, all of Clintwood, for plaintiff in error.
Greear, Bowen, Mullins & Winston, Norton, for defendant in error.
Before EGGLESTON, SPRATLEY, BUCHANAN, MILLER, SMITH and WHITTLE, JJ.
BUCHANAN, Justice.
The Commonwealth's attorney of Dickenson county filed a petition in the circuit court of that county praying that a writ of quo warranto be awarded in the name of the Commonwealth against Joe G. Dotson, the appellant, to remove him from office as a member of the Board of Supervisors from Kennedy Magisterial District. The petition alleged that Dotson had been duly elected to that office on November 4, 1947, had qualified and performed his duties but had since moved his residence to Coeburn, in Wise county, and that hence the office should be declared vacant as provided by section 15-488 of the Code.
A writ was accordingly issued by the judge of said court and duly served on Dotson, who filed a motion to quash, a demurrer and an answer.
When the matter came on for hearing, on motion of the defendant a jury was empaneled and evidence was introduced by both sides, at the conclusion of which the Commonwealth's attorney moved that the jury be discharged and the case tried by the court, on the ground that there was no issue for the jury to try. The motion was sustained, the jury was discharged and afterwards, for reasons stated in a written opinion, the court decided that Dotson had removed from his district, ordered that he be removed from his office as supervisor and that the office be declared vacant.
The defendant here challenges that ruling on grounds of procedure, raised by his motion to quash and his demurrer, as well as on the merits of the case.
First, he asserts that no order was entered awarding the writ. That is true, but the writ is not void on that account. The statute, section 8-859, provides that if in the opinion of the court or judge the reasons stated in the petition are sufficient, the writ shall be awarded by the court or judge returnable to the next term of the court, and the same shall be signed by the judge and attested by the clerk of the court. This writ recited that in the opinion of the judge the reasons stated in the petition were sufficient in law, and it was signed by the judge and attested by the clerk. It would have been better practice to have entered an order showing the filing of the petition and noting the issuance of the writ, but the statute does not specifically require that to be done, as section 8-860 does require with respect to *492 an information in the nature of a writ of quo warranto. Failure to do so was not sufficient ground for dismissing the writ in this case.
Next, it is said the writ was invalid because not returnable as provided by the statute and because the petition was in the name of the Commonwealth's attorney. There is no substance to these points. The writ summoned the defendant to the next term of the court, which is the language of the statute. The fact that there was added "and on the first day of said term," stating that date, was in aid of orderly procedure and there is no suggestion that it did the defendant any harm. The petition was signed by the Commonwealth's attorney, prayed that the writ be awarded and prosecuted in the name of the Commonwealth, and the writ was issued accordingly, all as provided by the applicable sections of the Code.
Again, the defendant argues that the writ of quo warranto does not lie to oust him and declare his office vacant, because, he says, section 8-857 provides that the writ may be awarded "Against any person who shall intrude into or usurp any public office", and that he is neither intruder nor usurper, but holding pursuant to an admittedly regular election and qualification. It has long been settled in Virginia that this argument is without validity.
In Watkins v. Venable, 99 Va. 440, 39 S.E. 147, in response to the same argument, it was held that chapter 145, now chapter 37 of the 1950 Code, sections 8-857 to 8-865, first introduced into our statute law by the Code of 1887, was not intended to narrow the use of the writ and make it less comprehensive in trying the title to an office than the common law proceeding of quo warranto, in which title to office could be tested if the incumbent was not in possession de jure, although he might be a full de facto officer; and that to construe the statutes to limit the use of the writ to trying the title of intruders and usurpers would so narrow the common law use of it as to render, the proceeding of practically little value.
It is too firmly settled now to be successfully questioned that quo warranto is an appropriate writ to determine the right to a public office and to oust one who intrudes into, usurps or unlawfully holds the same; and its use was proper in this case. Royall v. Thomas, 28 Grat. 130, 69 Va. 130; Bland and Giles County Judge Case, 33 Grat. 443, 74 Va. 443; Sinclair v. Young, 100 Va. 284, 40 S.E. 907; Williams v. Commonwealth ex rel. Smith, 116 Va. 272, 81 S.E. 61; City of Roanoke v. Elliott, 123 Va. 393, 96 S.E. 819; Commonwealth ex rel. Kelly v. Rouse, 163 Va. 841, 178 S.E. 37; 44 Am.Jur., Quo Warranto,§ 22, p. 100, § 23, p. 102.
On the hearing the defendant had a right to trial by a jury. There is a difference of opinion among the courts as to whether this right existed at common law, although it seems to have been the general practice to submit issues of fact to a jury in such proceedings. In England a jury trial has now been specifically provided for by statute, 3 Geo. II, ch. 25. 44 Am.Jur., supra §§ 111, 113, pp. 171, 173. We think it is also required by our statutes. Section 8-865 provides that on the trial "the verdict shall be `guilty', or `not guilty'," and "the court shall give such judgment as is appropriate and authorized by law". "Verdict" is the word commonly applied to the decision of a jury, and "judgment" is used to describe the action of the court following the verdict.
In that view, it was error for the court to discharge the jury before a verdict and to proceed to try the case without a jury. Whether it was reversible error depends, of course, upon whether the evidence presented a jury question, i. e., whether the jury could reasonably have concluded from the evidence that the defendant had not removed from the district from which he had been elected.
The source of practically all the material evidence was the testimony of Dotson himself. For a number of years prior to his election as supervisor he had lived at Darwin, in Kennedy District, where he conducted a mercantile business in rented *493 property. In time his business decreased. He thought the rent was too high but was unable to get it reduced. He then tried to buy the property but failed, and in July, 1949, he moved his stock of goods to a store building which he had built at Coeburn, in Wise county, some fifteen miles from Darwin. At that time he was living in a house at Darwin, which he testified belonged to his son. In September, 1949, at his son's direction, he sold that house and used the money to pay for a brick residence which he built in Coeburn, close to the store. While the title to this residence was in his name, he testified that he had no money in it but was merely holding it until his son got back from the army.
After the sale of the house at Darwin, he and his wife lived, or "shacked," as he called it, in the back end of the store at Coeburn. When the house at Coeburn was completed he moved some of his household goods into it from Darwin, in September, 1949, stored some with his married daughter and left some in the home of another son at Darwin.
After going to Coeburn he attended all the meetings of the supervisors and claimed mileage from Coeburn until his right to do so was questioned, whereupon he offered to pay back any excess. The distance from Coeburn to the place of meeting was about fourteen miles farther than from Darwin. Some time early in 1950 the Commonwealth's attorney advised Dotson that he could not move out of his district and hold his office. Dotson replied that he thought he had a right to do that, citing instances of people voting in Dickenson county and living elsewhere, but stating that if he was wrong about it he would move back. Thereupon he began to pay his son at Darwin $5 a month for a room in which to live on his trips to Darwin and in which he had previously stored a bed and a stove.
There is no contradiction of his evidence that he continued to own a small tract of land at Darwin; that while he and his wife stayed at Coeburn during the week, they came back to his son's at Darwin each week-end and at times for one or two nights during the week and that he called that home. Prior to the time he began paying rent to his son he was negotiating for the purchase of a house and store in Kennedy District. While at Coeburn he refused to be assessed with poll tax in Wise county but paid that tax in Dickenson county, where he voted, and returned his automobile for taxation there. He insisted that when he moved from Darwin he had no intention of abandoning that as his home. He testified that his stay at Coeburn was temporary, only for business purposes, and that he had no intention of staying there.
Williams v. Commonwealth ex rel. Smith, supra, was a quo warranto proceeding to test the right of Williams to remain a member of the common council of the city of Alexandria, to which he had been duly elected, it being alleged that his office had become vacant because he had removed from the city to the county. On the facts there, which had points of similarity to those here, this court held that Williams had not moved with the intention of changing his residence, and said: "For the purpose of voting and holding office a man cannot have more than one legal residence. A legal residence, once acquired by birth or habitancy, is not lost by temporary absence for pleasure, health or business, or while attending to the duties of a public office. Where a man has two places of living, which is his legal residence is to be determined largely, where the right to vote or hold office is involved, by his intention. When he acquires a new legal residence, he loses the old; but to effect this there must be both act and intention." 116 Va. at page 277, 81 S.E. at page 63.
It was said that the true test in cases of this kind is this: If a person leave his original residence with the intention of not returning, and adopt another, for a time however brief, with the intent to remain there, his first residence is lost. But if he left his original residence with the intention of returning, such original residence continues in law, notwithstanding the temporary absence of himself and family.
*494 In Bruner v. Bunting, 15 Law Reg. 514, quoted at length in Cooper's Adm'r v. Commonwealth, 121 Va. 338, 346, 93 S.E. 680, 682, Judge Kelly, afterwards President of this court, reviewed the authorities and held that as used in the Virginia election laws residence has substantially the same meaning as domicile, and sums the matter up succinctly thus: "A change of place without the intent to abandon the old and acquire a new domicile will not work a change of legal residence."
Every man is deemed to have a domicile somewhere. Before a domicile once established becomes lost or changed, a new domicile must be acquired by removal to a new locality with intent to remain there, and the old domicile must be abandoned without intent to return. Cooper's Adm'r v. Commonwealth, supra, 121 Va. at page 348, 93 S.E. at page 683; 28 C.J.S., Domicile § 13a, page 30; 17 Am. Jur., Domicile, § 16, p. 599, § 17, p. 601, § 22, p. 604.
There is a presumption that a domicile once acquired subsists until a change is proved and the burden of proving the change is on the party alleging it. Williams v. Commonwealth ex rel. Smith, supra, 116 Va. at page 278, 81 S.E. at page 63; Pilson v. Bushong, 29 Grat. 229, 239-240, 70 Va. 229, 239-240.
The trial court stated in its opinion: "While the defendant contended that his moving to Coeburn was only temporary, the facts and circumstances and his own testimony show that he moved to Wise County with the intention of staying for an indefinite period and that his intention of living in Dickenson County again was contingent upon the happening of events which might never take place, as is shown from his testimony as follows:" The testimony that follows is from a vigorous cross-examination by the court in which was this:
"Q. You told me a while ago, Mr. Dotson, the reason that you moved back to Darwin was to hold your office as supervisor, after the Commonwealth Attorney talked to you?
A. That's right.
"Q. Before that time you didn't have any intention of moving back here, did you? A. I don't know that I intended to move back to Darwin, but I did have intention of coming back to Dickenson County just as soon as I could pick out the place, find the place I could buy and get reasonable.
"Q. Until that happened you expected to stay in Coeburn? A. I did, I expected to stay there with my business through the week and I expected to come back to my old home place on the week-end, which I have done all the time."

* * * * * *
"Q. You didn't have any definite time in your mind as to when you would move back?
A. No, sir."
In the same examination, however, the court asked him, "Did you have any intention of moving your place of business and not living at Darwin but going to Coeburn?" He answered, "No, sir, I did not. I never intended to go there to stay."
The fact that the time of his going back was not then definite was not conclusive. That may happen frequently with one who is away from home. He does not acquire a domicile where he is if he has no intention of staying there and had no intention of abandoning his former home when he left there. The intention that accompanied Dotson's move from Darwin to Coeburn was a question of fact. The truth of his statement that he did not intend to abandon his home at Darwin and did not intend to remain in Coeburn is to be determined in the light of the facts and circumstances disclosed by the evidence. The jury was the proper tribunal to decide that question in this instance.
The judgment below is therefore reversed and the case is remanded for a new trial to be had in accordance with this opinion.
Reversed and remanded.