# CIRCUIT COURT OF LOUDOUN COUNTY

Barbara Dixon et al.

v.

Virginia State Board
of Elections et al.

September 16, 2011

Case No. (Civil) 69285

BY JUDGE THOMAS D. HORNE

This case came to be heard on the petition of Barbara Dixon, Eleanor Lockwood, Carl Wootten, Ruri Wootten, and Margery Wallo seeking a determination of the eligibility of Mr. David Imad Ramadan, a candidate for the General Assembly representing the 87th District of Virginia, to vote and hold office within that district. Petitioners challenge, pursuant to Virginia Code § 24.2-431, the voter registration filed by Mr. Ramadan on April 7, 2011, changing his address from 25601 Quits Pond Court, South Riding, Virginia, to 25591 America Square, South Riding, Virginia. They seek the cancellation of his registration and, by way of declaratory relief, a judicial determination that he is not eligible to be a candidate on the ballot to represent the 87th District because he is not eligible to vote in the 87th District and that the Loudoun County Electoral Board and/or State Board of Elections exceeded their legal authority by registering Mr. Ramadan at a new address and placing him on the ballot for the primary election. § 8.01-184, Va. Code Ann.

Virginia Code § 24.2-519 provides that, "[i]n order to qualify as a candidate at any primary, a person must be legally qualified to hold the office for which he is a candidate and be qualified to vote in the primary in which he seeks to be a candidate." Article II, Section 1, of the Constitution

of Virginia (1971) provides that, to qualify to vote, an individual must be a citizen of the United States, eighteen years of age, and a resident of the Commonwealth of Virginia and of the precinct where he votes. The Constitution of 1971 adopts a new definition of residence, defining residence, for the purpose of qualifying to vote, as requiring both domicile and a place of abode.

Virginia Code § 24.2-101 provides that, "[t]o establish domicile, a person must live in a particular locality with the intention to remain" and that "[a] place of abode is the physical place where a person dwells." *See also Sachs v. Horan*, 252 Va. 247, 250 (1996). Although "a voter may have more than one abode, [a voter] can have only one domicile." 1992 Op. Atty Gen. Va. 108, 110. "The location of a voter's domicile requires a factual determination." *Id.* at 111. The burden is on the prospective voter to prove that he meets the dual domiciliary requirement. *Kegley v. Johnson*, 207 Va. 54, 57 (1966).

In *Williams v. Commonwealth*, the Virginia Supreme Court found that, when a person leaves his original residence and adopts a new residence, his first residence is lost, but, when a person leaves his original residence with the intention of returning to the original residence, then the original residence continues. *Williams*, 116 Va. 272, 279 (1914). The Court noted that, to acquire a new residence, there must be both act and intention. *Id.* at 277.

In a recent opinion, the Virginia Department of Taxation summarized the requirements to change one's domicile as follows:

> In order to change from one legal domicile to another legal domicile, there must be (1) actual abandonment of the old domicile, coupled with an intent not to return to it, and (2) an acquisition of a new domicile at another place, which must be formed by personal presence and an intent to remain there permanently or indefinitely.

*Re § 58.1-1821 Appeal: Individual Income Tax*, 2010 Va. Tax LEXIS 219, 3 (2010). The Virginia Department of Taxation further stated that:

> In determining domicile, consideration may be given to the individual's expressed intent, conduct, and all attendant circumstances including, but not limited to, financial independence, profession or employment, income sources, residence of spouse, marital status, sites of real and tangible property, motor vehicle registration and licensing, and such other factors as may be reasonably deemed necessary to determine the person's domicile. A person's true intention must be determined with reference to all of the facts and

circumstances of the particular case. A simple declaration is not sufficient to establish residency or domicile.

*Id.* at 3, 4. Consistent with the opinion of the Virginia Department of Taxation, the State Board of Elections Policy 2009-005 provides that "[o]nce a person has established domicile, establishing a new domicile requires that he intentionally abandon his old domicile." With respect to intent, the Policy also provides that "[a] person who applies to register to vote in a precinct for the primary purpose of registering to vote or voting in that precinct has not established the intent to establish domicile there."

Although the residence of a spouse may be a factor to consider in determining a voter's domicile, it is important to note that spouses may maintain different domiciles. *See Commonwealth v. Rutherfoord,* 160 Va. 524 (1933). In *Rutherfoord,* the Court rejected "the common-law rule of the merging of the wife's legal identity into that of the husband" and found that a married woman, who lived with her husband on amicable terms, could have a separate domicile from her husband. *Id.* at 531, 543.

The evidence presented reflects that David Ramadan owns two houses located in South Riding, Virginia, one located at 25601 Quits Pond Court [Quits Pond house] and another located at 25591 America Square [America Square house]. Special Agent Anthony Royall, with the Virginia State Police, testified that he visited both houses on August 11, 2011. Agent Royall testified that a white SUV, the car Mr. Ramadan most often drives, was parked at the America Square house when he visited the house around 9:00 a.m. and 2:30 p.m. and that Mr. Ramadan came out of the America Square house around 2:30 p.m. to speak with Agent Royall. Agent Royall testified that he did not see any vehicles in the driveway at the Quits Pond house.

Four neighbors of the Quits Pond house testified that they have not seen Mr. Ramadan at the Quits Pond house since April 2011 and have seen him in the neighborhood only once since April at a block party on July 4, 2011, weekend. One neighbor testified that she saw a moving van outside of the Quits Pond house. Although the other neighbors testified that they have not seen any moving trucks, they also testified that they are either gone from the house during business hours or may not have noticed a moving truck.

A custodian of records from the Virginia Department of Motor Vehicles testified that she prepared a driver history record for Petitioners' counsel. The record reflects that Mr. Ramadan has a white SUV registered at the America Square address and that Mr. Ramadan changed the address on his driver's license on April 2, 2011, from the Quits Pond address to the America Square address.

Testimony was also received from Clay Chase, the treasurer of the Loudoun County Republican Committee, and Judy Brown, the General Registrar for Loudoun County. Mr. Chase testified that Mr. Ramadan has

made all of his donations using the Quits Pond address; however, Mr. Chase testified that it is possible that Mr. Ramadan has not made any donations since 2009 and that the address information on record is only updated every two years. Mr. Chase further testified that he received an e-mail from Patricia Hess on July 5, 2011, questioning Mr. Ramadan's residency. Mr. Chase testified that, on July 10, 2011, before 8:00 a.m., he found Mr. Ramadan's white SUV in the driveway at the Quits Pond residence. A picture that Mr. Chase took of the vehicle in the driveway was entered into evidence. Mr. Chase testified that he and his wife met with the Commonwealth's Attorney for Loudoun County and provided the photograph to him.

Ms. Brown testified that Mr. Ramadan filed a change of voter registration address on April 7, 2011, changing his address from the Quits Pond address to the America Square address, and that Mr. Ramadan's wife filed a change of voter registration address on June 1, 2011.

David Ramadan then testified as a witness for both sides. Mr. Ramadan testified that he and his wife bought the Quits Pond house in 2003 and that they bought the America Square house on September 15, 2008. The deed to the America Square house, indicating that Mr. and Mrs. Ramadan took title as tenants by the entirety, was made a part of the record.

Mr. Ramadan testified that they had the America Square house custom built and that it took over a year longer than anticipated to build. Mr. Ramadan further testified that the America Square house, although a townhouse, has the same living space as the Quits Pond house and is a much nicer house, with custom selected appliances, cabinets, flooring, and countertops. Photographic evidence of the home show it as well appointed and containing furnishings and many personal affects.

Mr. Ramadan stated that it was his intention that he and his wife would move into the America Square house, along with Mr. Ramadan's parents; however, due to a decline in the housing market, the value of the Quits Pond house dropped and went slightly underwater. Mr. Ramadan testified that his parents still moved into the America Square house, that he and his wife fully furnished the house, that the utility records for the house are held in his name, and that he has maintained an office in the house where he spends time daily. Mr. Ramadan also testified that, and provided numerous photographs showing that, he and his family, who almost all live nearby, hold their Thanksgiving, Christmas, and Easter celebrations at the America Square house.

David Ramadan further testified that he officially moved to the America Square house on April 1 or 2, 2011. Mr. Ramadan testified that he spent some nights at the Quits Pond house the first week of his move but that he has spent every night thereafter at the America Square house. Mr. Ramadan also testified that he maintains his campaign office at the America Square house and that, because of this, his wife, who is a federal government

employee, must continue to maintain her secure office at the Quits Pond house.

A letter from the manager of the Chantilly post office confirmed that Mr. Ramadan continues to receive mail at the Quits Pond address. Mr. Ramadan explained that, although he continues to receive mail at the Quits Pond address regarding utilities for that house, he already received other mail at the America Square address and there was no need for him to notify the post office of a forwarding address. Mr. Ramadan ended his testimony on direct examination by stating that he considers the America Square house as his current home and that he has no intention to return to the Quits Pond house.

The Court finds, based upon the evidence presented, that David Ramadan has met his burden of establishing that he is now domiciled at the America Square address and that the America Square house is his place of abode. The evidence shows that Mr. Ramadan left the Quits Pond address intending to abandon that home as his domicile. Mr. Ramadan testified that he has not spent a night at the Quits Pond house since April, his former neighbors have not seen him at the Quits Pond house since April and have only seen him in the neighborhood once since April, and the DMV records reflect a change in address.

This is not a case where a voter has changed his address for the primary purpose of registering to vote. Mr. Ramadan testified that he bought the America Square house in 2008 with the intention of moving to that house, which is supported by the decline in the real estate market, the care with which the house was furnished, the personal memorabilia kept in the house, the annual family celebrations held at the house, and the fact that Mr. Ramadan has maintained an office at the house. Unlike the college student who came to Virginia to only be a student, Mr. Ramadan's decision to relocate and abandon his previous domicile was reflective of a decision made some years before when he and his wife elected to purchase a property nearby with the intention of making it their home. *Cf. Kegley v. Johnson*, 207 Va. 54 (1966).

Although running as a candidate for the 87th District of the House of Delegates provided motivation for Mr. Ramadan to complete his original intention to move to the America Square house, it was not the *raison d'etre* for the change of domiciles. Furthermore, the fact that Mr. Ramadan's wife did not move at the same time and still maintains an office at the Quits Pond house is immaterial, as spouses may maintain separate domiciles. As previously noted, Virginia has long respected the right of happily married couples to maintain separate domiciles. *See Commonwealth v. Rutherford*, 160 Va. 524 (1933).

In summary, the Constitution mandates that where one lawfully votes in the Commonwealth is controlled by their intent and place of habitation. Thus, domicile and place of abode are the lodestone by which the issue of residence for purposes of voting is measured. Should one relocate from

one residence to another, they must not only show the intent to abandon the former but the intent to make the new home a permanent one. Intent is a subjective matter and must be determined by the words of the voter and a consideration of the circumstances surrounding the move. Based upon the testimony given in this case, the Court finds the testimony of Mr. Ramadan to be credible and that the facts are supportive of his expressed intent to abandon his old, and acquire a new, domicile in early April of this year.

The Court, therefore, rejects the Petitioners' challenge to the voter registration filed by Mr. Ramadan on April 7, 2011, and declines to cancel the registration. For the same reasons, the Court also declines to issue the declaratory judgments requested by Petitioners. Accordingly, the Petition will be dismissed and the case placed among the ended causes.