## Richmond

### Jack N. Kegley, General Registrar of Albemarle County v. Dudley Disosway Johnson.

April 25, 1966.

Record No. 6127.

Present, All the Justices.

*George P. Smith, Jr.*, for the plaintiff in error.

*Robert M. Musselman*, for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Section 24 of the Constitution of Virginia provides, in part, that "No . . . student in any institution of learning [shall] be regarded as having either gained or lost a residence, as to the right of suffrage, by reason of his location or sojourn in such institution." [1] In this writ of error, we are called upon to decide, for the first time, the effect of this constitutional provision upon the residence requirements for voting in this state.

The controversy arose when Dudley Disosway Johnson, a student at the University of Virginia, made application to Jack N. Kegley, general registrar of Albemarle County, to register to vote. In his application, Johnson alleged that he had "been registered to vote at his previous address in Temple Terrace, Florida but is no longer so registered." Johnson also alleged that he had "resided in the New Copeley Hill Apartments in Albemarle County for the past year."

Kegley refused Johnson's application. Johnson then filed in the circuit court his "Petition to Determine Voter's Rights to Register." Code, § 24-112. Kegley filed an answer stating that "none of the allegations of the petitioner are denied" except the conclusion that Johnson was entitled to register to vote.

The trial court heard the case and entered a final order rendering judgment in favor of Johnson and ruling that "he is entitled to be registered as a voter in this County." Kegley was granted a writ of error.

Section 18 of our Constitution, insofar as is pertinent here, bestows the right of suffrage upon "Every citizen of the United States, twenty-one years of age, who has been a resident of the State one year, of the county, city, or town, six months, and of the precinct in which he offers to vote, thirty days next preceding the election in which he offers to vote [and] has been registered." [2]

Section 20 of the Constitution, insofar as is pertinent here, provides that "Every citizen of the United States, having the qualifica-

---

[1] Section 24 of the Constitution is given statutory effect by Code, § 24-20.
[2] Section 18 of the Constitution is given statutory effect by Code, § 24-17.

tions of age and residence required in section eighteen, shall be entitled to register."[3]

The crucial inquiry to be made in determining the question before us is the meaning of the word "residence," as used in the constitutional provisions and statutes relating to voting, and the extent to which section 24 of the Constitution and Code, § 24-20, relating to students, affect such meaning.

The case of *Bruner* v. *Bunting*, 15 Va. Law Reg. 514, concerned the question of the legality of certain votes cast in a local election in Bristol by persons alleged to have been non-residents of the city. Judge Kelly, later a member and President of this court, laid down the principles which are applicable here when he wrote:

" . . . [T]he word 'residence' as a prerequisite to the right to vote is not to be understood in its popular sense as denoting merely the act of abiding in a particular place. . . . [T]he word as used in the suffrage laws expresses a distinct legal idea, and denotes *a relationship which the law creates between an individual and a particular locality*." 15 Va. Law Reg., at p. 518.

" . . . It may be safely said . . . that as used in the Virginia election laws, 'residence' is substantially synonymous with 'domicile.' " 15 Va. Law Reg., at p. 516.

" . . . A change of place without the intent to abandon the old and acquire a new domicile will not work a change of legal residence." 15 Va. Law Reg., at p. 518.

In *Simmons* v. *Land*, 19 Va. Law Reg. 890, one of the questions involved was whether certain voters in a contested election met the residence requirements for voting. Judge West, later a member of this court, wrote:

"The term 'residence' as used in the clauses of the constitutions of the various states defining political right, is synonymous with, 'a domicile,' denoting a permanent dwelling place to which the party when absent intends to return." 19 Va. Law Reg., at p. 896.

*Williams* v. *Commonwealth*, 116 Va. 272, 81 S. E. 61, was a *quo warranto* proceeding to test the right of Williams to remain on the common council of Alexandria, it being alleged that following his election he had removed his residence from the city into the adjoining county. The first Judge Buchanan wrote:

"For the purpose of voting and holding office a man cannot have

[3] Section 20 of the Constitution is given statutory effect by Code, §§ 24-67, 24-68 and 24-69.

more than one legal residence. . . . When he acquires a new legal residence he loses the old, but to effect this there must be both act and intention." 116 Va., at p. 277.

*Dotson* v. *Commonwealth*, 192 Va. 565, 66 S. E. 2d 490, was a *quo warranto* proceeding to remove Dotson as a member of the board of supervisors of Dickenson County because he had allegedly moved his residence to Wise County following his election. The present Mr. Justice Buchanan wrote:

"Every man is deemed to have a domicile somewhere. Before a domicile once established becomes lost or changed, a new domicile must be acquired by removal to a new locality with intent to remain there, and the old domicile must be abandoned without intent to return. . . ." 192 Va., at pp. 571-572.

" . . . He does not acquire a domicile where he is if he has no intention of staying there and had no intention of abandoning his former home when he left there." 192 Va., at p. 573.

"There is a presumption that a domicile once acquired subsists until a change is proved and the burden of proving the change is on the party alleging it. . . ." 192 Va., at p. 572.

Thus, every Virginia decision which has come to our attention, touching upon the right to vote or to hold public office, has equated the term "residence" with "domicile." In order to be eligible to register to vote under the Constitution and statutes of Virginia, the prospective voter, when his right to register is questioned, has the burden of satisfying the dual domiciliary requirements of presence and intention with respect to the locality in which he seeks to vote.

█ How do section 24 of the Constitution and Code, § 24-20 affect that burden when the applicant for registration is a student in an institution of learning?

Section 24 and Code, § 24-20 express a clear constitutional and legislative purpose that such a student does not, by his mere presence in the locality in which the institution is located, thereby establish such locality as a new voting residence nor forfeit his previous voting residence.

It is stated in an annotation in 98 A.L.R. 2d 488, that the effect of such constitutional and statutory provisions is to nullify "the fact of a student's physical or bodily presence as a step in determining his residence, and the courts generally treat it as a neutral factor, ascertaining his residence from the evidence of his intent." 98 A.L.R. 2d, at p. 490.

58

The crucial factor, then, in the case before us, is Johnson's intention with respect to his stay in Albemarle County.

 Johnson's petition, filed in the lower court, contained allegations which, if proved, might have presented a different case for decision. That case might have shown that he gave up his voting residence in Florida and had acquired such a residence in Virginia when he applied to register to vote in Albemarle County.

But the record shows that Johnson testified that "he came to Albemarle County solely to be a student, that he had no plans to remain in the County after he completed his studies." He further stated that "he pays out-of-state rates at school." He also testified that he "was registered to vote in Florida" but did not indicate whether he had given up such registration or whether it was still effective.

Johnson is bound by that testimony and it is determinative of the issue here involved. His statement shows clearly and conclusively that his intention was to remain in Albemarle County only for a specified purpose and merely for a fixed period of time, and not to remain indefinitely for the purpose of making the county his home. In such circumstances, he is to be regarded as not having gained a residence as to the right of suffrage, pursuant to the constitutional and statutory limitations applicable here.

 Johnson points, however, to the fact that his wife was registered to vote by Kegley and from that fact advances several arguments.

The registration of his wife, Johnson argues, foreclosed Kegley from questioning his domiciliary intent since she "is in Virginia only by virtue of the fact that her husband has come to the state, and can have, as in the case of most wives, none but a domiciliary intent identical with that of her husband."

Johnson also argues that to bar him while permitting his wife to register denies him his right to equal protection of the laws.

These are interesting arguments but arguments are all that they can be. We are not informed of the circumstances under which Mrs. Johnson happened to be registered to vote. The record is completely silent as to when she was registered, as to whether Kegley knew her husband was an out-of-state student and as to what assertions she made to induce Kegley to accept her application for registration.

Kegley's registration of Mrs. Johnson did not foreclose him from questioning Johnson's domiciliary intent, under the circumstances of this case. When it appeared from Johnson's application that he had been previously registered to vote in Florida and was living in Albe-

marle County to attend school, it became Kegley's duty to inquire into the status of the applicant's residence for voting purposes and to refuse registration if the residence requirements were not met.

Nor, upon this record, can it be said that Johnson was denied equal protection of the laws when he was refused registration while his wife was permitted to register. It may well be that it was improper to register the wife. If that be true, the rule of equal protection of the laws does not require that registration be improperly granted to Johnson as well.

Johnson finally argues that to construe section 24 of the Constitution and Code, § 24-20 as imposing an absolute bar to his gaining a voting residence in Virginia would be in violation of his right to equal protection of the laws. We do not so construe the constitutional and statutory provisions here in question. We simply say that Johnson's presence in Albemarle County, without the requisite domiciliary intent, was not sufficient to qualify him as a resident for voting purposes.

It was error, therefore, for the trial court to rule that Johnson was "entitled to be registered as a voter" in Albemarle County. The final order embodying that ruling will be reversed and Johnson's petition will be dismissed.

*Reversed and dismissed.*