**Barbara MANARD et al.**

v.

**Andrew P. MILLER, Attorney General, Commonwealth of Virginia, et al.**

Civ. A. No. 514-71-R.

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 26, 1971.

Robert P. Dwoskin, Seymour DuBow, Dubow & Dwoskin, Richmond, Va., for plaintiffs.

Attorney General's Office, Richmond, Va., for defendants.

Before BRYAN, Circuit Judge, and KELLAM and MERHIGE, District Judges.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Upon consideration of the pleadings, motions and the record in this action, as well as the arguments of counsel, on brief and orally, the Court finds and concludes, and adjudges, orders and decrees thereon, as follows:

1. The motions of Bethany Woodward and Linda Cayton to intervene herein as plaintiffs are granted.

2. This is not a class action within the meaning of Rule 23, Federal Rules of Civil Procedure. The facts and circumstances controlling the right of applicants to register may vary in respect to each of them, especially in such matters as residence and domicile, as well as in regard to the nature and content of the questions propounded to them by their respective registrars at the time they first sought registration. Therefore, the plaintiffs here cannot be said to be representative of other students desiring registration.

3. As to those persons who applied for registration before or after the entry of the restraining order in this ac-

tion, but who are not now parties to this action, the said restraining order shall not be construed to grant them registration.

 4. The Court should, and does, abstain from deciding the issue of the right of the several plaintiffs to register to vote. The plaintiffs were admitted to registration provisionally under the temporary restraining order of this Court without regard to the prior ruling of the registrar on their residence or domicile. They may now re-apply for registration. If they are rejected, then they have the right under the law of Virginia, Code 24.1–67, to appeal forthwith to the circuit court of the county, or the corporation court of the city, in which his or her registrar is located, for a review of the registrar's decision, if adverse to them. This course is now available to any of them, and the Virginia statute gives the appeal priority for hearing on the docket, and makes the appeal accessible on a very simple record. This conclusion is supported by the recent decision of Harris v. Samuels, 440 F.2d 748 (5 Cir. 1971), cert. denied, 404 U.S. 832, 92 S.Ct. 77, 30 L.Ed.2d 62 (1971).

5. Jurisdiction of this action is hereby retained, with leave to any party to return to this Court after termination of the State proceeding for determination of any Federal question arising therein.

MERHIGE, District Judge (dissenting).

My view of the issues and the legal principles to be applied thereto require a reluctant disagreement with the conclusions of my colleagues. The conclu-

sions of the majority result in a denial of preliminary relief in the form of an order permitting certain students, members of the plaintiff class, from provisionally voting in a State election to be held on November 2, 1971.[1]

Except for their implied approval of the desirability of resolving most questions of eligibility to vote by what appear to be expeditious and efficient State judicial procedures, I must and do respectfully dissent from the course the Court chooses here.

I suggest that the issue in this case is not, as expressed by my fellow Judges, "the right of the several plaintiffs to register to vote." As I construe what I consider to be the plain language of the pleadings, the issue is whether discriminatory and unconstitutional prerequisites to registering to vote have been and are being employed by the defendants, State officials, in the use of certain so-called criteria in the form of Va. Code Section 24.1–1(11), and opinions of the Attorney General of Virginia. In short, the constitutionality of the Virginia statute, its use, and the use of the Attorney General's opinion, are under attack as representing unconstitutional criteria in determining *one* facet of the right to register to vote.

This action appears to contain all the hornbook requisites of a class action as contemplated by the drafters of Rule 23.

The class is readily identifiable as students of voting age attending college in Virginia. My fellow judges conclude that this is not a class action and support that bare conclusion on a finding that "the facts and circumstances controlling the right of applicants to register may vary in respect to each of them

1. The Court had previously entered an order permitting provisional registration of students of voting age, who without reference to the alleged unconstitutional statute and opinions of the Attorney General of Virginia, qualified under the laws of Virginia. Defendants were ordered to segregate registration records of any such provisional registrant who they deemed

would not have been permitted to register but for the Court's decree. Hence, provisional voting could be had by those otherwise qualified subject to the Court's final adjudication of the issues herein. A more detailed discussion of the suggested preliminary relief will be forthcoming in the course of this dissent.

\* \* \* as well as in regard to the nature and content of the questions propounded to them \* \* \* at the time they first sought registration."

A class of plaintiffs need not be composed of individuals identical in all respects.

The rule, in this type of case, requires beside the general demand of numerosity, questions of law or fact common to the class; that the claims of the plaintiffs, original and intervening, be typical of the class and will adequately protect class interests; that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, Fed.R.Civ.P., Rule 23, 28 U.S.C. The rule does not require that all persons in the class desire to take advantage of the rights they may have, nor that each member have in fact been identically treated by the defendants.

> And there is action or inaction within the meaning of the rule even though it is directed to only one or a few members of the class so long as it is based on grounds which have general application to the class. The fact that some members of the class are personally satisfied with the action complained of is irrelevant.
>
> \* \* \* \* \* \*
>
> The injunctive or declaratory relief referred to does not require that the district court look into the particular circumstances of each member of the class. 3B Moore's Federal Practice, ¶ 23.40, at 23–651, 23–654 (2d ed. 1969).

On these principles, and based upon the pleadings and upon oral representations made at oral argument, it is clear to me that a class exists: that of students of

voting age in the State.[2] The named and intervening plaintiffs claim to have been dealt with similarly by reason of their status as students in applying to register, on the basis of an alleged discriminatory and unconstitutional State statute and opinions of the Attorney General. They seek from this Court not a determination of their eligibility to vote, based on all state-law requirements, but only a ruling that certain criteria be omitted in considering their applications. Classically, this is a proper class action. Courts have been able in the past to consider such claims without ruling how, in the end, the State officials must decide the question before them. The instances in which courts have directed that applications to attend State college, to obtain State or private employment, or to register to vote, be considered without reference to forbidden criteria, without undertaking to rule on each individual's compliance with other valid requirements, are too numerous to cite.[3]

Indeed, that was the thrust of the preliminary relief granted herein—

—that the opportunity for provisional registration without reference to the criteria attacked, be extended to the class.

Arguments to the contrary notwithstanding, abstention is not a proper course for a Federal court to take unless there is some pending or potential State litigation which may obviate the necessity of determining the merits of federal contentions.

A court should not "abstain" solely because a State forum is available in which the same claim might be pressed. See Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). To do so would be to impose a

---

2. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969)— Plaintiff sued for himself and "otherwise qualified" voters.

3. In Kirstein v. Rector and Visitors of University of Virginia, 309 F.Supp. 184 (1970), this Court ordered the University to consider "without regard to sex" plaintiffs' applications for admission.

requirement that a plaintiff, in effect, exhaust his State remedies before applying for Federal relief. Federally guaranteed rights are not so conditioned. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Indeed the Supreme Court of the United States has stated that escape by a Federal court from the duty to hear and decide Federal constitutional claims, is not permissible merely because the rights asserted may be adjudicated in some other forum. The judge-made doctrine of abstention, sanctions such escape only in narrowly limited "special circumstances." Zwickler v. Koota, *supra*, 247, 88 S.Ct. 391.

Abstention may be requisite if there is an uncertain or ambiguous question of State law which, if resolved definitively by a State court, may under a plaintiff's claim moot or alleviate uncertainties about the State law which gave rise to constitutional doubts. Askew v. Hargrave, *supra;* Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). But the Court should stay its hand only where "the issue of state law is uncertain." Harman, v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50; Reetz v. Bozanich, *supra*, 86, 90 S.Ct. 788

With deference to my colleagues, I am unable to determine wherein lies the uncertainty in State law, the resolution of which might ease the plaintiffs' difficulties, or indeed be of further assistance to this Court. It does not exist in the possibility that the State courts may change their interpretation of State law; in *Reetz* and *Askew,* abstention was proper where no authoritative ruling existed. That is not this case. In 1966, the Virginia Supreme Court of Appeals construed the language of the statute here in issue. Kegley v. Johnson, 207 Va. 54, 147 S.E.2d 735 (1966). That case indicates that prospective voters, first, have the burden of establishing domicile in the locality where they seek to vote by showing the two elements of presence and intention to remain. The Court then treated the effect of the statute particularly applicable to students:

[The statutory and constitutional provisions] express a clear constitutional and legislative purpose that such a student does not, by his mere presence in the locality in which the institution is located, thereby establish such locality as a new voting residence nor forfeit his previous voting residence.

It is stated in an annotation in 98 A.L.R.2d 488, that the effect of such constitutional and statutory provisions is to nullify "the fact of a student's physical or bodily presence as a step in determining his residence, and the courts generally treat it as a neutral factor, ascertaining his residence from the evidence of his intent." 98 A.L.R.2d, at p. 490.

The crucial factor, then, in the case before us, is Johnson's intention with respect to his stay in Albemarle County. Kegley v. Johnson, 147 S.E.2d at 737.

No one, and least of all the defendants, has suggested to the Court what further elucidation of the law might be forthcoming were the statute put before the State courts again.[4]

My fellow judges conclude that "the Court should, and does, abstain from deciding the issue of the right of the several plaintiffs to register to vote." In short, the Court abstains from deciding an issue which I do not believe is the subject of this suit. There may be a myriad of reasons why members of the plaintiff class do not have the right to register to vote.

---

4. See footnote 4 on p. 14 of defendants' memorandum wherein they assert Kegley v. Johnson, 207 Va. 54, 147 S.E.2d 735 (1966), has construed the language in question in a constitutional manner.

The issue before the Court addresses itself only to whether unconstitutional prerequisites to register to vote have been and are being employed by the defendants. That, and only that, is the question to be answered.

The plaintiffs argue that, as so construed, Va.Code § 24.1–1(11) renders it substantially more difficult for them to carry the burden of establishing residence. It seems to me almost whimsical for the Court, without deciding the legal or factual issues raised, to remit the plaintiffs to seek relief in State courts of record under expedited voters' appeal procedures, when such courts will be bound by the ruling of their appellate court in *Kegley*. In today's ruling, therefore, the court abstains without suggesting what problem-solving eventuality it awaits and by the same act compels the plaintiffs to exhaust State remedies which, for the practical purposes of the upcoming election, are not available. Such a decree as the Court has entered compounds what I respectfully suggest are threshold errors on the part of the majority.

When exhaustion of State procedures is complete, more than likely some members of the class will be adjudged qualified regardless of the use of the alleged unconstitutional criteria—or perhaps it is better stated—in spite of the use of the suspect criteria.[5] Some more than likely will, perhaps on the basis of the suspect criteria, be precluded from registering. Wherein will either result resolve the constitutional issue as to whether constitutionally forbidden criteria has been and is being used?

Abstention is the more inappropriate on the further ground that the constitutional rights in issue are of such a fundamental nature as is the right to vote. Harman v. Forssenius, *supra;* Edwards v. Sammons, 437 F.2d 1240 (5th Cir. 1971).

One of the dangers of abstention is that the delay inherent in that procedure may diminish or destroy the value of the plaintiffs' eventual victory, if any. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). It would appear to me that if this Court must defer action on the merits while retaining jurisdiction, it at the least should exercise its powers on conventional principles to prevent such prejudice. A preliminary injunction should be granted in order to maintain the status quo when such valuable rights are at stake if it appears that the price to the defendants of protecting their rights is not great and the likelihood of their eventual success is substantial. Consolidation Coal Co. v. Disabled Miners of Southern West Virginia, No. 15,173, 442 F.2d 1261 (4th Cir., 1971); West Virginia Highlands Conservancy v. Island Creek Coal Co., 441 F.2d 232 (4th Cir., 1971). This Court has so acted in earlier voting rights litigation, Bufford v. Holton, 319 F.Supp. 843 (E.D.Va.1970).

The plaintiffs cite several cases in support of their position on the merits. It is by now certain that restrictions upon a citizen's right to vote will be closely scrutinized and upheld only upon a showing that they are supported by a compelling governmental interest. Bufford v. Holton, *supra,* 845.

In Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970), the Supreme Court invalidated on equal protection grounds a Maryland statute barring access to the polls to residents of Federal enclaves. See also, City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); Cipriano v. City of Houma, *supra;* Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

---

5. The defendants exhibit shows over 2,000 students were approved as meeting all criteria for registering to vote, during the provisional registration period.

The compelling-interest test has been applied to invalidate substantial obstacles to access to the franchise as well as outright bars. In Wilkins v. Bentley, 385 Mich. 670, 189 N.W.2d 423 (1971), a similar State statute imposing a special burden upon a class of students was held invalid under the equal protection clause. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), itself concerned no total bar to the polls but only a diminishment in the strength of an individual's vote. *Phoenix, Kramer* and *Cipriano* concerned conditions which voters might overcome, as did Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), the poll tax case. See also, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

The State law in issue requires a student who regularly abides at a location in Virginia to establish his residency there without, somehow, the use of evidence that in fact he is then and there present. Instead, looking to the perhaps distant future when he may have obtained his degree, he must show with nebulous assertions of "intention" that he plans to remain in the locality a still further indefinite period. These tasks are not imposed upon nonstudents.

Nevertheless, students are, like the residents of a Federal enclave in Evans v. Cornman, *supra,* affected by and interested in the affairs and decisions of the community as are other residents.

Without resolving the ultimate constitutional issue, it appears to me that the plaintiffs have shown such likelihood that they will prevail on the merits as entitled them to preliminary relief by way of an order permitting those registered without regard to the terms of § 24.1–1(11) or the opinions of the Attorney General to cast their votes, to be counted among the valid returns contingent upon the outcome of this case. I would limit the order as not affecting those who had admittedly failed to make any effort to register in sufficient time to vote in the upcoming election for reasons unassociated with the issues in this case.

The State officials, to whom no bad faith is ascribed, had, according to the Attorney General's oral statements and reflected in the defendants' exhibit, made inquiry of those who provisionally registered, as to why they had not done so before, and concluded that 1,943 out of 3,495 assigned reasons in no way related to the alleged actions of the defendants. That category of registrants, although perhaps also in the category of those who would have been registered regardless of the criteria used, are simply registered to vote in elections subsequent to the upcoming November 2d election. Plaintiffs do not expect preliminary relief for those members of the class. It is those members of the class who but for the use or threatened use of the suspect criteria would have complied with the requirements of the State law and hence would have been eligible to participate in the upcoming election, for whom our immediate concern should lie. It is my view that the rights involved are of such a vital concern to all citizens that the number so affected, be it 1 or 1,000, is of little consequence. My concern admittedly is perhaps somewhat more intensified by the belief that if the widely disseminated expressed concern of many of our fellow citizens in reference to the youth of our country is of any validity, then Courts, of all our institutions, ought to be extremely alert to the rights of those young people who by their very attempt to participate in the voting process have expressed their conviction that the system is indeed worthy of participation.

In addition to the legal principles which I believe to be applicable, provisional voting as suggested would not be disruptive of the electoral process. The cost is esti-

mated at $12,000.00,[6] a figure admittedly miniscule in consideration of constitutional rights. With some few exceptions, officials to be elected on November 2d will not take office until January 1972. This case might well have been and could now be concluded well before January 1972. On the issues as I view them, few factual matters are involved. The question is primarily one of law.

Reliance on the case of Harris v. Samuels, 5 Cir., 440 F.2d 748, is in the instant case, in my opinion, misplaced. No allegation of an unconstitutional statute was made in *Harris*. Plaintiffs in that case contended that defendants were erroneously construing a statute of Alabama. Abstention was decreed until "State courts have authoritatively construed the State statute * * *," p. 753. That court went on to say that after the State court's construction of the statute had been obtained or when efforts to obtain such an adjudication had been exhausted, then plaintiffs could if they so desired seek Federal relief. Indeed the State court's construction of the Alabama statute might well have made all issues moot. This is not our case.

The defendants assert that the plaintiffs lack equity in making their appeal at the eve of the election. There is substance to this argument, but not enough to sway the balance. In some cases tardy plaintiffs have been denied relief on such grounds, but only where the relief which might be owing was almost beyond the court's power to grant. Maryland Citizens for a Representative General Assembly v. Governor of Maryland, 429 F.2d 606 (4th Cir. 1970), concerned the reapportionment plan for an entire state, challenged so soon before the elections that a new plan could not properly be prepared by the legislature. The instant case raises no such risk of irreparable damage to the state's interests if preliminary relief issues, other than the slight expense of providing for conditioned voting, and the plaintiffs' interest could thereby be fully protected.

Counsel for the plaintiffs sought at argument to excuse the alleged tardiness on the ground that it was not until very recently that plaintiffs could be found.[7] Lateness, of course, does not bar their claim. But a word is due on this proffered justification. It should go without saying that it is not lawyers who bring suits, but their clients. That an attorney could not "find" his clients until late may allay criticism of his own professional practices, but it does nothing for his clients' position. Nonetheless, in my view the rights of the plaintiff class are so important that lateness in asserting them should not be fatal to their case. At the most it would only go to the request for preliminary relief.

---

6. This figure may contemplate provisional voting of all who provisionally registered. The record is not clear in this regard, the figures of course may be considerably less by the elimination of the approximately 1,943 referred to heretofore.

7. The suit is sponsored by the American Civil Liberties Union.
In addition, it should be noted that plaintiffs have always contended that the issues could have been briefed and argued prior to Nov. 2, 1971. My reluctance to adopt that portion is based upon the assertion of counsel for the defendants that more time was required to conclude the taking of evidence and the briefing of the issues. If my view of the issues is accurate, it does appear that if factually true, a con-

cise stipulation to the effect that certain criteria including the statute in question are used by the voting officials in connection with efforts of students to register could be reached, and counsel could address themselves to the constitutional issues therein raised.
Admittedly defendants may have wished to take evidence as to whether the originally named plaintiffs were representative of the alleged class—no suggestion at oral argument, so far as I can recall, was made as to the intervening plaintiffs not being representative. Defendants simply asserted that this was not a class action. I have already expressed myself as to my views of the correctness of that assertion.

I would grant preliminary relief by way of provisional voting and proceed to disposition of the constitutional issues which have been raised. Accordingly, I must respectfully decline to join my fellow Judges of the Court except as to those portions of the Court's order which are not in conflict with my views as herein expressed.