Susan **PAXMAN** et al.

v.

Woodrow **WILKERSON** et al.

Civ. A. No. 683–71–R.

United States District Court,
E. D. Virginia,
Richmond Division.

March 5, 1975.

Philip J. Hirschkop, Alexandria, Va., John B. Mann, Richmond, Va., for plaintiffs.

Walter H. Ryland, County Atty., County of Henrico, James L. Sanderlin, Richmond, Va., Benham M. Black, Staunton, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

On December 6, 1971, plaintiffs, Susan Paxman and Leslie Gough, instituted this class action, pursuant to 42 U.S. C. § 1983 and Rule 65(b) of the Federal Rules of Civil Procedure, on behalf of all pregnant teachers in Virginia against the members of all city and county school boards having allegedly discriminatory maternity leave policies which require pregnant teachers to leave their positions at a fixed time prior to childbirth or prevent their returning after birth of the child and prevent pregnant teachers from availing themselves of leave policies commonly available for other teachers who, for medical reasons, require leaves of absence.

The named defendants consisted of the State Superintendent of Public Instruction, the Division Superintendents of the Henrico and Albemarle County Public Schools, and the individual members of the Henrico and Albemarle County School Boards. Plaintiffs sought declaratory, injunctive and compensatory relief and invoked the jurisdiction of the Court pursuant to 28 U.S.C. §§ 1343 (3) and 2201.

The relevant facts in this matter are, in all material aspects, undisputed. On May 6, 1971, plaintiff Paxman signed an employment contract for the 1971–72 school year to teach English at Albe-

marle High School. Subsequent to the signing of the contract, plaintiff learned she was pregnant and that her estimated due date was December 26, 1971. On July 26, 1971, she was notified by R. Ben Turner, Chairman of the English Department of Albemarle High School, that she should terminate the contract in accordance with the maternity leave policy maintained by the Albemarle County School Board.[1]

Plaintiff Paxman appeared before the Albemarle County School Board on August 9, 1971 to request that she be allowed to fulfill her contract. At that time she presented a letter from her physician, Dr. Guy M. Harbert, Jr., in which he stated that, in the absence of unforeseen complications, he knew of no medical reason she could not teach until the termination of her pregnancy. On August 10, 1971, Mr. Thomas Hurlburt, Clerk of the Albemarle County School Board, wrote to plaintiff Paxman to indicate that the Board had decided to ter-

minate her contract in accordance with their policy.

With respect to plaintiff Gough, on April 30, 1971, she signed an employment contract to teach mathematics at J. R. Tucker High School in Henrico County for the 1971–72 school term, which commenced on August 23, 1971. On or about October 1, 1971, she informed the Henrico County School Board that she was pregnant and that the expected due date was March 29, 1972. She also requested to be permitted to complete the semester which ended in January of 1972. On October 6, 1971, Mr. A. P. Hall, Jr., Director of Personnel for the Henrico County Public Schools, informed plaintiff Gough that her employment contract would be terminated as of November 23, 1971, which was apparently the date required pursuant to the Henrico County School Board pregnancy regulation then in effect.[2]

On or about October 22, 1971, plaintiff Gough's physician, Dr. William T.

1. The maternity leave policy then in effect in the Albermarle County school system provided:
A teacher who becomes pregnant prior to reporting for duty at the beginning of a new school term shall report this fact to the Superintendent and obtain a release from her contract.
A teacher who becomes pregnant after commencing her contractual duties shall relinquish her position four months before the expected date of delivery except when the four months period occurs with only one report card period remaining to complete the contractual obligations for the term. The teacher will be required to submit to her principal a physician's statement giving the approximate date of delivery when the pregnancy becomes known.
Teachers in good standing who have completed one year of service are eligible for maternity leave without pay. Such teachers will be allowed to return to the system at a time mutually acceptable to the teacher and the administration.
AT THE DISCRETION OF THE SUPERINTENDENT AND PRINCIPAL, TEACHERS WHO BECOME PREGNANT MAY CONTINUE BEYOND THE ESTABLISHED TERMINATION DATE WHENEVER SUITABLE REPLACEMENTS CANNOT BE FOUND.

2. The Henrico County regulation provided:
Pregnancy of four months duration shall be sufficient cause for termination of contract, and earlier if deemed advisable. This regulation may be waived by the superintendent or his designated representative in individual cases whereby the teacher may continue for another thirty (30) days or so if deemed to be in the best interest of the school system. If the employee continues to work during the pregnancy, the school board shall not be held liable in case of miscarriage, accident or any injury to the mother or the offspring.
The teacher shall be required to submit to the Director of Personnel a physician's statement certifying the expected delivery date and approval of continuation of employment.
Any teacher failing to notify the personnel office of pregnancy at least thirty (30) days before the end of the fourth month may be refused re-employment in the future.
A teacher who is on leave of absence, or who has resigned due to pregnancy, may not be employed as a substitute until such time as she would ordinarily be eligible for re-employment.
A period of sixty (60) days must elapse after the delivery date before a teacher may be contracted to teach. A medical statement must be presented verifying the teacher is physically able to return to work.

Moore, provided her with a letter, which she forwarded to the School Board, in which he stated that he had given her permission to work until her expected due date as long as the pregnancy progressed normally. On November 11, 1971, plaintiff Gough received a letter from Joseph B. Seller, Assistant Superintendent for General Administration and Personnel for Henrico County Public Schools, in which he indicated that the School Board had denied her request to teach until the end of the semester, January 23, 1972, but due to the inability of the School Board to find a replacement, she would be allowed to teach until December 17, 1971.

In view of the lengthy history of this matter, a recapitulation of the proceedings is in order prior to turning to the motions now pending before the Court. Following the institution of this action, the named county defendants filed appropriate answers to the complaint and each of the defendants filed motions to dismiss which the Court subsequently denied. The suit was conditionally declared a class action on October 30, 1972.

The matter came on for argument on November 15, 1972 on plaintiffs' motion for summary judgment as well as motions for summary judgment filed on behalf of each of the named defendants. Having expressed its view from the bench that plaintiffs were entitled to the relief sought, and concluding that the action was maintainable as a class action pursuant to Rule 23(b)(1), the Court gave notice, under date of November 22, 1972, to each member of the defendant class that it would entertain written motions any member wished to file as to why any such member should be declared an inappropriate member of the

class. Motions for exclusion were filed on behalf of the School Board of the City of Staunton, Virginia, and on behalf of each of the named county defendants, which were also subsequently denied.

On January 23, 1973, the Court, by written memorandum, reiterated the opinion it had previously stated from the bench that school board regulations setting forth special provisions for termination of employment or special leave policies, or other special provisions by reason of pregnancy, were violative of the Fourteenth Amendment to the United States Constitution. The Court further indicated that this conclusion was premised on Cohen v. Chesterfield County School Board, 326 F.Supp. 1159 (E.D.Va.1971), which presented substantially identical issues as in the instant cause,[3] and which had been affirmed by a divided panel of the Fourth Circuit Court of Appeals on September 14, 1972. The Court noted, however, that on January 15, 1973, the Fourth Circuit had reversed its earlier decision following a rehearing *en banc.* Cohen v. Chesterfield County School Board, 474 F.2d 395 (4th Cir. 1973). Considering itself dutybound to follow the law as enunciated by its appellate court, this Court accordingly granted summary judgment for the defendants and dismissed the action.

Thereafter, on February 7, 1973, plaintiffs moved the Court to vacate its order of January 23, 1973 and to refrain from entering a final order until such time as the United States Supreme Court had an opportunity to rule in the case of LaFleur v. Cleveland Board of Education, 465 F.2d 1184 (6th Cir. 1972),[4] for which a petition for a writ of certiorari had been filed on Novem-

3. In *Cohen,* the Chesterfield County rule provided that while termination of employment of an expectant mother might be extended if the superintendent received written recommendations from the expectant mother's physician and her principal, and if the superintendent felt that an extension would be in the best interests of the pupils and school involved, termination would, without

such recommendations, become effective at least four months prior to the expected birth of the child.

4. In *LaFleur,* a divided panel of the Sixth Circuit Court of Appeals held that the Cleveland rule, which required maternity leave at the beginning of the fifth month of pregnancy and a three-month post-delivery

ber 26, 1972, and until such time as counsel for plaintiff in *Cohen,* who were the same attorneys serving as counsel for the plaintiffs in the instant matter, had an opportunity to file and obtain a ruling on a petition for a writ of certiorari in that matter. On February 14, 1973, the Court, considering said motion to be one properly brought under Rule 60(b)(6), Fed.R.Civ.P., ordered, pursuant to Rule 62(b), Fed.R.Civ.P., that its previous judgment be stayed pending disposition of plaintiffs' motion to vacate.

On March 5, 1973, plaintiffs filed a notice of appeal from this Court's order of January 23, 1973 in which the Court had granted defendants' motion for summary judgment. The named county defendants, as well as the School Board of the City of Staunton, thereafter filed motions to dismiss plaintiffs' appeal. In addition, these parties filed notices of cross-appeal from this Court's orders of October 30 and November 22, 1972, maintaining the class action nature of this suit.

Subsequently, on April 23, 1973, the Supreme Court granted certiorari in both *LaFleur* and *Cohen,* 411 U.S. 947, 93 S.Ct. 1925, 36 L.Ed.2d 408 to resolve the conflict between the Courts of Appeals regarding the constitutionality of mandatory maternity leave policies for public school teachers. These matters were argued on October 15, 1973 and a decision was rendered on January 21, 1974 in which the Supreme Court held that such mandatory termination provisions violated the Due Process Clause of the Fourteenth Amendment. 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). On the basis of that ruling, plaintiffs in the instant matter filed a motion for summary judgment on February 20, 1974, which, in light of the fact that this action was then on appeal, caused the Court to inform the parties on March 14, 1974 that no further action would be taken while the matter was be-

fore the Court of Appeals. On August 2, 1974, the Fourth Circuit, in a *per curiam* opinion, dismissed the appeal for lack of a final appealable order, finding that this Court's stay of the order from which the parties had appealed was still in effect.

Presently before the Court, therefore, are plaintiffs' motions to vacate the Court's order of January 23, 1973 and for summary judgment. Also before the Court are motions filed on behalf of the named county defendants to vacate the Court's order of October 30, 1972 and cross-motions for summary judgment. On the basis of the considerable record before it, the Court deems all matters in this action ripe for disposition.

The named defendants advance basically four points in support of their motions. First, they argue that they are immune from suit since they are not "persons" under § 1983 and since they acted in good faith and in accord with longstanding principles of law. Next, the defendants contend that plaintiffs' claims are now moot in light of the school boards' adoption of new policies which strike all references to maternity leave and instead treat these matters as they do all other extended absences due to medical conditions. Third, they suggest that neither the plaintiffs nor the defendants represent classes of interested individuals over which the Court may exercise its jurisdiction. Finally, defendants argue that on the basis of the facts before the Court, the instant matter is distinguishable from and, therefore, not controlled by the Supreme Court's opinion in Cleveland Board of Education v. LaFleur, *supra,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

■ With respect to defendants' first two contentions, the Court concludes that while a defense of immunity from damages clearly has been incorporated into § 1983 doctrine, Skinner v. Spellman, 480 F.2d 539 (4th Cir. 1973); Eslinger v. Thomas, 476 F.2d 225 (4th Cir.

waiting period before becoming eligible to return to teaching, violated the Equal Pro-

tection Clause of the Fourteenth Amendment.

1973); Kirstein v. Rector & Visitors of University of Virginia, 309 F.Supp. 184 (E.D.Va.1970), this defense does not apply to plaintiffs' claims for back pay, which are not simply claims for damages but are rather an integral part of the equitable remedy of reinstatement. Eslinger v. Thomas, *supra* at 230 n. 4, citing Harkness v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970) and Smith v. Hampton Training School for Nurses, 360 F.2d 577, 581 (4th Cir. 1966).

■■■ Moreover, the contention raised specifically by the Henrico County defendants who, relying on City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), argue that they, in their official capacities, are not "persons" for the purposes of obtaining either monetary or injunctive relief pursuant to 42 U.S.C. § 1983, has been rejected by this Court on a number of recent occasions. See Hirschkop v. Virginia State Bar Ass'n, No. 74–0243–R, Mem. decis. at 7–9 (E.D.Va., Jan. 7, 1975); Hogge v. Hedrick, 391 F.Supp. 91 at 96 (E.D.Va., Nov. 29, 1974). Suffice it to say that acceptance of defendants' contention would emasculate the Civil Rights Act of 1871 and would effectively overturn the line of cases originating in Monroe v. Pape, 365 U.S. 161, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which have considered the principle settled that 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) confer jurisdiction upon federal district courts to hear civil rights actions for both monetary and equitable relief against municipal officials in their official capacities. In the absence of specific guidance from either its appellate court or the Supreme Court of the United States, this Court is unwilling to return to a view of federal law discarded nearly a decade and a half ago. In light of this determination, the Court further concludes that plaintiffs' claims were not made moot by the subsequent policy changes adopted by the named defendants. See Arkansas Educational Ass'n. v. Board of Education, 446 F.2d 763 (8th Cir. 1971).

As to the defendants' third point, they suggest, on the one hand, that the plaintiffs have failed to satisfy either the numerosity requirements of Rule 23, Fed. R.Civ.P., or the requirement that they be representative of a class in that the facts and circumstances controlling plaintiffs' rights to continue teaching may vary from those of other pregnant teachers because of differences in school board policies, in prescribed termination dates, in teachers' general health and responsibilities, and in the availability of replacement teachers necessary to insure continuity in the educational process. At the same time, the named defendants assert that the defendant class is inappropriate.

In this regard, the Henrico County defendants argue, in an argument unappealing to the Court, that since the various local school boards are constitutionally independent of one another, in the absence of some connective policy link they should not be made to represent all other boards who may be similarly situated. The Albemarle County defendants take a different approach arguing, once again under City of Kenosha v. Bruno, *supra,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), that since school boards are not "persons" under § 1983, the Court's order of October 30, 1972, in which it defined the defendant class as "all public county and city school boards of the State of Virginia which require that a pregnant school teacher cease her teaching at some time during her period of pregnancy other than a time of her own choosing," was improper.

■■■ While the instant matter may indeed present varying facts and circumstances with respect to the individual members of the plaintiff and defendant classes, Rule 23 does not require that all members of the class be identically situated. Kristiansen v. John Mullins & Sons, Inc., 59 F.R.D. 99 (E.D.N.Y.1973). Nor, for that matter, contrary to the contention of the Henrico County defendants, does the rule require that all persons in the class desire to take ad-

vantage of the rights they may have. The fact that some members of the class are personally satisfied with the action complained of is irrelevant, Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968), and the injunctive or declaratory relief referred to in the rule does not require the Court to look into the particular circumstances of each member of the class. See 3B Moore's Federal Practice, ¶ 23.40, at 23-651, 23-654 (2d ed. 1974).

■ This action appears to contain all the requisites of a class action as contemplated by the drafters of Rule 23, as amended. See Advisory Committee's Note 39 F.R.D. 98, 102 (1966). The plaintiff class is readily identifiable as all pregnant teachers in the Commonwealth of Virginia. That the class is so numerous that joinder of all members is impracticable is evident from the fact that in the Henrico County school system alone, fifty-six teachers were separated during the 1970-71 and 1971-72 school years for reasons of pregnancy.[5] See Exhibits H and I to defendant Campbell's affidavit, filed October 6, 1972.

Moreover questions of law and fact are indeed common to the class, they being whether a member of the plaintiff class was forced to leave or refrain from returning to her employ as a teacher due to reasons of pregnancy as a result of a school board policy utilizing a conclusive presumption of incapacity.[6] Further, there is no question in the Court's mind that the claims of the representative parties are typical of the claims of the plaintiff class or that they, the named plaintiffs, will fairly and adequately protect the rights of the class members.[7]

■ With respect to the Albemarle County defendants' contention concerning the impropriety of defining the defendant class in terms of "school boards," the Court concludes there is some merit to this claim in light of the Fourth Circuit's intervening *per curiam* opinion in Singleton v. Vance County Board of Education, 501 F.2d 429 (4th Cir., May 8, 1974), wherein a majority of the panel held that the "Board of Education" was not a "person" subject to suit under § 1983.[8] In the interests of justice, however, and in view of its ear-

---

5. The Henrico County system was but one of 138 public school systems maintained in Virginia during that period; the number of teachers in the Henrico system represented approximately 3.4% of the number of teachers in the public school systems throughout the State of Virginia. Moreover, defendants' reliance on this Court's denial of class action status in Spratley v. Surry County School Board, No. 475-70-R (E.D.Va.1972), is misplaced since there the Court found that only three teachers had in any way been affected by the county's allegedly unconstitutional maternity leave policy.

6. Manard v. Miller, 53 F.R.D. 610 (E.D.Va. 1971), aff'd. 405 U.S. 982, 92 S.Ct. 1253, 31 L.Ed.2d 449 (1972) which is cited by the Henrico County defendants, is clearly distinguishable from the case at bar. There, in an action by Virginia college students claiming the right to register to vote in the state, a divided panel of this Court, finding that the plaintiffs were not representative of other students desiring registration, held that the suit could not be maintained as a class action in that the facts and circumstances controlling the right of applicants to

register may vary in respect to each of them, especially in such matters as residence and domicile, as well as in regard to the nature and content of the questions propounded to them by their respective registrars at the time they first sought registration. In the instant matter, however, the class as well as the questions of law and fact have been so carefully limited as to eliminate many if not all of the problems identified by the majority of the Court in *Manard*.

7. The rights of members of the plaintiff class may well be severely prejudiced should the Court grant the defendants' motion to vacate its order maintaining this matter as a class action in light of the apparent running of the applicable two-year statutory limitation period in effect at the time this suit was instituted. See Almond v. Kent, 459 F. 2d 200 (4th Cir. 1972).

8. While the Court finds persuasive Judge Winter's dissenting opinion in *Singleton*, in which he suggests that it is far from settled whether a Board of Education is a "municipal corporation" within the meaning of § 1983 under both Monroe v. Pape, *supra*, 365 U.S. 167,

lier analysis of City of Kenosha v. Bruno, *supra,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the Court deems it appropriate to amend, *sua sponte,* the defendant class to include the "members" of all such school boards which maintained allegedly discriminatory policies with regard to maternity leave for pregnant teachers.

One final matter remains with respect to the class action nature of this suit. In its order of November 22, 1972, the Court stated that it deemed this action to be maintainable as a class action pursuant to Rule 23(b)(1), Fed.R.Civ.P. Upon reconsideration, the Court has concluded that this is not the case. Since plaintiffs' primary claim appears to involve equitable relief, with damages in the form of back pay being but a part of the equitable relief needed to obviate the alleged past discrimination, this matter is more properly designated a class action pursuant to Rule 23(b)(2). See Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974); Sabala v. Western Gillette, Inc., 371 F.Supp. 385 (S.D.Tex.1974). Accordingly, the Court's previous order defining the defendant class will be vacated and modified to the extent it reflects a finding at variance with this determination.

Finally, and as previously noted, the named defendants have moved the Court for summary judgment, alleging that Cleveland Board of Education v. La-Fleur, *supra,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), does not support plaintiffs' motion for summary reversal of the Court's stayed judgment in favor of defendants. The Henrico County defendants specifically contend that the maternity leave policy in effect within their system at the time this suit was instituted combined termination date guidelines with sufficient flexibility to avoid the rigid policies condemned in *LaFleur* and its companion case, Cohen v. Chesterfield County School Board. They allege that depending upon the teacher's health, the school calendar, the availability of a replacement teacher and the teacher's responsibilities, their former policy permitted a pregnant teacher to work well past her fifth month of pregnancy.

Once again, the Albemarle County defendants have chosen a different route. They suggest that in the case of plaintiff Paxman, it was not an instance of a teacher being terminated under a five-month rule, such as was disapproved in *LaFleur.* Rather, they argue that she was terminated solely under the provision of the Albemarle County maternity leave policy which stated:

> A teacher who becomes pregnant prior to reporting for duty at the beginning of a new school term shall report this fact to the Superintendent and obtain a release from her contract.

The Albemarle County defendants contend that this rule has a rational relationship to the educational goal of continuity of instruction recognized by the Supreme Court in *LaFleur* and is, therefore, not in violation of the Due Process Clause of the Fourteenth Amendment.

In *LaFleur,* the Supreme Court found that maternity leave regulations directly affect the fundamental freedom of choice in matters of marriage and family life and, accordingly, the Court posited that "the Due Process Clause of the Fourteenth Amendment requires that such rules must not needlessly, arbitrarily, or capriciously impinge upon this vital area of a teacher's constitutional liberty." 414 U.S. at 640, 94 S.Ct. at 796. While the question squarely before the Court in *LaFleur* was whether the interests advanced in support of the rules of the Cleveland and Chesterfield County School Boards—namely, continuity of classroom instruction and the necessity of keeping physically unfit teachers out of the classroom—justified the particular maternity leave procedures they had adopted, the language of Mr. Justice Stewart's majority opinion supplies the

81 S.Ct. 473 (1961), and *City of Kenosha,* the Court, as previously noted, considers itself duty-bound to follow the authority of its appellate court.

appropriate test for evaluating the validity of the instant claims.

■ In terms of plaintiff Gough's claim against the Henrico County defendants, there is no question that Cohen v. Chesterfield County School Board, *supra*, is dispositive of this matter, for, while the defendants seek to avoid *Cohen* by arguing that their maternity leave provision provided considerably more flexibility than that which the Supreme Court declared unconstitutional, the Court concludes that this is a distinction without a difference. While it is true that the relevant portion of the Henrico County policy provided that the five-month termination rule may be waived in individual cases "whereby the teacher may continue for another thirty (30) days or so if deemed to be in the best interest of the school system," so, too, in *Cohen*, the Chesterfield County policy allowed that the "[t]ermination of employment may be extended if the superintendent receives written recommendations from the expectant mother's physician and her principal, and if the superintendent feels that an extension will be in the best interest of the pupils and school involved."

That the Henrico County policy provided some flexibility is evidenced by the fact that plaintiff Gough was permitted to teach until December 17, 1971, while her original termination date following notification of her pregnancy to the school board had been established as November 23, 1971. This extension, however, was provided solely for the convenience of the school board and, despite her request to do so, clearly did not permit plaintiff Gough to teach until the end of the school semester in January of 1972. These facts are nearly identical to those presented in *Cohen*, concerning which the Supreme Court noted:

> Similarly, if continuity were the only goal, it seems ironic that the Chesterfield County rule forced Mrs. Cohen to leave work in mid-December 1970 rather than at the end of the semester

in January, as she requested. 414 U. S. at 643, 94 S.Ct. at 798.

Moreover, the Court finds that the school board's willingness to extend plaintiff Gough's termination date for its own purposes weighs heavily against the "conclusive presumption" of incapacity apparently underlying the remainder of the board's leave policy. Since the Henrico County defendants advance no justification for their procedures other than those rejected by the Supreme Court in *LaFleur* and *Cohen*, the Court must conclude that the Henrico County maternity leave provision was unconstitutional and that plaintiff Gough's due process rights were thereby violated.

Although plaintiff Paxman's claim and the Albemarle County provision pursuant to which her teaching contract was terminated prior to the start of the 1971 school year provide a slightly different question, the analysis articulated in *LaFleur* is similarly controlling. Certainly where a teacher is pregnant prior to the commencement of classes, there is good reason to believe that she will require a leave of absence at some point and of some minimal duration during the school year just prior to and shortly after the birth of her child. Likewise, under such circumstances there exists a reasonable expectation that continuity of instruction may be affected, such that a temporary substitute or more permanent replacement teacher will be required, and that difficult administrative decisions might be avoided by a scheme which is tantamount to a unilateral rescission of the employment contract.

With respect to the former concern, the Court in *LaFleur* noted:

> We thus conclude that the arbitrary cut-off dates embodied in the mandatory leave rules before us have no rational relationship to the valid state interest of preserving continuity of instruction. As long as the teacher is required to give substantial advance notice of her condition, the choice of firm dates later in pregnancy would serve the boards' objectives just as

well, while imposing a far lesser burden on the women's exercise of constitutionally protected freedom. 414 U. S. at 643, 94 S.Ct. at 798.

Similarly, with regard to the latter contention, the Court in *LaFleur* responded to the school boards' argument that the mandatory termination dates serve the interest of administrative convenience since there are many instances of teacher pregnancy and the rules obviate the necessity for case-by-case determinations, in the following manner:

> While it might be easier for the school boards to conclusively presume that all pregnant women are unfit to teach past the fourth or fifth or even the first month, of pregnancy, administrative convenience alone is insufficient to make valid what otherwise is a violation of due process of law. The Fourteenth Amendment requires the school boards to employ alternative administrative means, which do not so broadly infringe upon basic constitutional liberty, in support of their legitimate goals. 414 U.S. at 647, 94 S.Ct. at 799.

Since the Albemarle County School Board provision under which plaintiff Paxman's contract was terminated clearly embodies an irrebuttable presumption of unfitness, regardless of the stage of the pregnancy at the time the school year begins, which presumption unduly penalizes a female teacher for choosing to bear a child, it too must be considered to be constitutionally defective. Accordingly, plaintiff Paxman is entitled to relief in the form of back pay consisting of the earnings she would have received, less any amounts actually earned, had she been permitted to teach until the termination date which she herself had selected.

In view of the Court's determination that this action is maintainable as a class action pursuant to Rule 23(b)(2) Fed.R.Civ.P., and, further, in view of the Court's conclusion that the plaintiff class is entitled to summary judgment against the members of the defendant class, as previously defined, the Court will order that counsel for the plaintiffs within fifteen days after the date of the order accompanying this memorandum, submit to the Court proposed methods by which back-pay or other appropriate relief may be computed for each member of the plaintiff class. The defendants shall have ten days thereafter in which to file counter-proposals. Cf. Robinson v. Lorillard Corp., 319 F. Supp. 835, 843 (M.D.N.C.1970), aff'd 444 F.2d 791, 802 n. 4 (4th Cir. 1971).

An order consistent with the findings of the Court shall issue.